**COMPOSITE EXHIBIT "A"**




# NOTE

**August 26, 1999**              **White Plains,**                    **New York**

[Date]                              [City]                             [State]

**49 Roundabend Road, Tarrytown, New York 10591**

[Property Address]

## 1. BORROWER'S PROMISE TO PAY

In return for a loan that I have received, I promise to pay U.S. $ **370,000.00.....**        (this amount is called "principal"), plus interest, to the order of the Lender. The Lender is **Republic Consumer Lending Group, Inc.**

. I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

## 2. INTEREST

Interest will be charged on unpaid principal until the full amount of principal has been paid. I will pay interest at a yearly rate of **7.500** %.

The interest rate required by this Section 2 is the rate I will pay both before and after any default described in Section 6(B) of this Note.

## 3. PAYMENTS

### (A) Time and Place of Payments

I will pay principal and interest by making payments every month.

I will make my monthly payments on the **first** day of each month beginning on **October 1, 1999**. I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. My monthly payments will be applied to interest before principal. If on **September 1, 2029**, I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."

I will make my monthly payments at **One Hanson Place, Brooklyn, New York 11243** or at a different place if required by the Note Holder.

### (B) Amount of Monthly Payments

My monthly payment will be in the amount of U.S. $ **2587.09**

## 4. BORROWER'S RIGHT TO PREPAY

I have the right to make payments of principal at any time before they are due. A payment of principal only is known as a "prepayment." When I make a prepayment, I will tell the Note Holder in writing that I am doing so.

I may make a full prepayment or partial prepayments without paying any prepayment charge. The Note Holder will use all of my prepayments to reduce the amount of principal that I owe under this Note. If I make a partial prepayment, there will be no changes in the due date or in the amount of my monthly payment unless the Note Holder agrees in writing to those changes.

## 5. LOAN CHARGES

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (i) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (ii) any sums already collected from me which exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the principal I owe under this Note or by making a direct payment to me. If a refund reduces principal, the reduction will be treated as a partial prepayment.

## 6. BORROWER'S FAILURE TO PAY AS REQUIRED

### (A) Late Charge for Overdue Payments

If the Note Holder has not received the full amount of any monthly payment by the end of **15** calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be **2** % of my overdue payment of principal and interest. I will pay this late charge promptly but only once on each late payment.

### (B) Default

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

NEW YORK FIXED RATE NOTE - Single-Family - Fannie Mae/Freddie Mac Uniform Instrument                    Form 3233 10/91


-5R(NY) (9111).02

VMP MORTGAGE FORMS - (800)521-7291
Printed on Recycled Paper



**(C) Notice of Default**
If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of principal which has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is delivered or mailed to me.

**(D) No Waiver By Note Holder**
Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

**(E) Payment of Note Holder's Costs and Expenses**
If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note, whether or not a lawsuit is brought, to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

**7. GIVING OF NOTICES**
Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.
Any notice that must be given to the Note Holder under this Note will be given by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

**8. OBLIGATIONS OF PERSONS UNDER THIS NOTE**
If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

**9. WAIVERS**
I and any other person who has obligations under this Note waive the rights of presentment and notice of dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

**10. UNIFORM SECURED NOTE**
This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses which might result if I do not keep the promises which I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions are described as follows:

**AGREEMENTS ABOUT LENDER'S RIGHTS IF THE PROPERTY IS SOLD OR TRANSFERRED**
Lender may require immediate payment in full of all Sums Secured by this Security Instrument if all or any part of the Property, or if any right in the Property, is sold or transferred without Lender's prior written permission. Lender also may require immediate payment in full if a beneficial interest in Borrower is sold or transferred and Borrower is not a natural person. However, Lender shall not require immediate payment in full if this is prohibited by federal law on the date of this Security Instrument.

If Lender requires immediate payment in full under this Paragraph 17, Lender will give me a notice which states this requirement. The notice will give me at least 30 days to make the required payment. The 30-day period will begin on the date the notice is mailed or delivered. If I do not make the required payment during that period, Lender may act to enforce its rights under this Security Instrument without giving me any further notice or demand for payment.

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

_Bruce Rothman_ _____ (Seal)  _____ (Seal)
**Bruce Rothman** -Borrower   -Borrower
SSN: ████████   SSN:

_____ (Seal)  _____ (Seal)
-Borrower   -Borrower

State of New York  County of Westchester ss.
On the 26th day of August , in the year 1999, before me the undersigned, a notary public in and for said state, personally appeared Bruce Rothman , [Sign Original Only] known to me or proved to me on the basis of satisfactory evidence to be the individual(s) whose name(s) is/are/subscribed to the within instrument and acknowledged to me that they executed the same in their capacity(ies), and that by their signature(s), the individual(s) or the person upon behalf of which the individual(s) acted, executed the instrument.

Form 3233 10/91

DAVID M FLEISHER
NOTARY PUBLIC STATE OF NEW YORK
NO. 4741462
QUALIFIED IN WESTCHESTER COUNTY
COMMISSION EXPIRES NOV 30

ALLONGE

FOR THE PURPOSE OF FURTHER ENDORSEMENT OF THE FOLLOWING DESCRIBED
NOTE, THIS ALLONGE IS AFFIXED AND BECOMES A PERMANENT PART OF SAID
NOTE:

LOAN NUMBER: ███████

NOTE DATE: 8-26-1999

LOAN AMOUNT: 370,000

BORROWERS: Bruce Rothman

PROPERTY ADDRESS: 49 Roundabend Road, Tarrytown, NY 10591

************************************************************************

Pay to the order of


Without Recourse
HSBC MORTGAGE CORPORATION (USA), SUCCESSOR BY ACQUISITION AND
MERGER WITH REPUBLIC CONSUMER LENDING GROUP, INC.

NILDA FELIZ
VICE PRESIDENT





**\*MTG1\***



**\*\*\* DO NOT REMOVE \*\*\***

WESTCHESTER COUNTY RECORDING AND ENDORSEMENT PAGE
(THIS PAGE FORMS PART OF THE INSTRUMENT)

THE FOLLOWING INSTRUMENT WAS ENDORSED FOR THE RECORD AS FOLLOWS:

TYPE OF INSTRUMENT   **MTG-MORTGAGE**         FEE PAGE  **19**  TOTAL PAGES  **19**
                 **(SEE CODES FOR DEFINITIONS)**

| | | | |
|---|---|---|---|
| STAT'Y CHARGE | 5.25 | MORTGE. DATE | 08/26/99 |
| REC'ING CHARGE | 57.00 | MORTGE. AMT | 370000.00 |
| RECMGT FUND | 4.75 | EXEMPT  YES  X NO | |
| EA 5217 | | | |
| TP-584 | 0.00 | REC'D TAX ON ABOVE MTGE: | |
| CROSS-REF. | 0.00 | YONKERS  $ | 0.00 |
| MISC. | 0.00 | BASIC  $ | 1850.00 |

LIBER:    26168
PAGE:      207

ADDITIONAL  $    900.00
SUBTOTAL  $  2750.00
MTA        $   925.00
SPECIAL   $     0.00
TOTAL PAID $  3675.00

THE PROPERTY IS SITUATED IN
WESTCHESTER COUNTY,
NEW YORK IN THE:
    **TOWN OF GREENBURGH**

TOTAL PAID
**67.00**

SERIAL NO.  **CQ19748**

$
  CONSIDERATION

DWELLING  **X** 1-6    NOT 1-6
    DUAL TOWN
RECEIVED:        DUAL COUNTY/STATE

TAX AMOUNT $
TRANSFER TAX#           HELD
                NOT HELD

TITLE COMPANY NUMBER:   **01**

EXAMINED BY   **LR16**  RECORDING DATE   **10/04/99**

TERMINAL CTRL#  **99277W018**  TIME   **09:30**
DATE RETURNED

WITNESS MY HAND AND OFFICIAL
SEAL

*Leonard N. Spano*

LEONARD N. SPANO
WESTCHESTER COUNTY CLERK

[Space Above This Line For Recording Data]

# MORTGAGE

## WORDS USED OFTEN IN THIS DOCUMENT

(A) "Security Instrument." This document, which is dated **August 26, 1999**, will be called the "Security Instrument."

(B) "Borrower." **Bruce Rothman and Denise Rothman,**

whose address is **49 Roundabend Road, Tarrytown, New York 10591**
sometimes will be called "Borrower" and sometimes simply "I" or "me."

(C) "Lender." **Republic Consumer Lending Group, Inc.**

will be called "Lender." Lender is a corporation or association which exists under the laws of **the State of New York**. Lender's address is **One Hanson Place, Brooklyn, New York 11243**

(D) "Note." The note signed by Borrower and dated **August 26, 1999** will be called the "Note." The Note shows that I owe Lender **Three Hundred Seventy Thousand and 00/100** Dollars (U.S. $ **370,000.00** ) plus interest. I have promised to pay this debt in monthly payments and to pay the debt in full by **September 1, 2029**

(E) "Property." The property that is described below in the section titled "Description of the Property," will be called the "Property."

(F) "Sums Secured." The amounts described below in the section titled "Borrower's Transfer to Lender of Rights in the Property" sometimes will be called the "Sums Secured."

## BORROWER'S TRANSFER TO LENDER OF RIGHTS IN THE PROPERTY

I mortgage, grant and convey the Property to Lender subject to the terms of this Security Instrument. This means that, by signing this Security Instrument, I am giving Lender those rights that are stated in this Security Instrument and also those rights that the law gives to lenders who hold mortgages on real property. I am giving Lender these rights to protect Lender from possible losses that might result if I fail to:

(A) Pay all the amounts that I owe Lender as stated in the Note;

(B) Pay, with interest, any amounts that Lender spends under Paragraphs 2 and 7 of this Security Instrument to protect the value of the Property and Lender's rights in the Property; and

(C) Keep all of my other promises and agreements under this Security Instrument.

**NEW YORK** - Single Family - FNMA/FHLMC UNIFORM INSTRUMENT

Form 3033 10/91

VMP-6R(NY) (9708)

Page 1 of 10

Initials: BR DR

VMP MORTGAGE FORMS - (800)521-7291

**SEE ATTACHED SCHEDULE "A"**

The above-mentioned property is improved by the construction of a single family residence only.

Being the same property which was conveyed to The Borrower by deed delivered and intended to be recorded simultaneously with this Mortgage. This Mortgage is a purchase money mortgage given to secure a portion of the consideration expressed in said deed.

The attached mortgage covers real property principally improved or to be improved by one or more structures containing in the aggregate not more than six residential dwelling units, each having their own separate cooking facilities.

TITLE NO. ▬▬▬▬▬▬

## DESCRIPTION - SCHEDULE A

ALL that certain plot, piece or parcel of land, situate, lying and being
in the Village of Tarrytown, Town of Greenburgh, County of Westchester
and State of New York, known and designated as Lot No. 76 on a certain
map entitled, "Section Three, Subdivision Map of Tarryhill in the
Village of Tarrytown, Town of Greenburgh, Westchester Co., N.Y.," dated
March 12, 1968 made by Ward Carpenter Engineers Inc., and filed in the
Westchester County Clerk's Office, Division of Land Records, on May 13,
1969 as Map No. 16711.

Co.

## DESCRIPTION OF THE PROPERTY

I give Lender rights in the Property described in (A) through (G) below:

(A) The Property which is located at                         49 Roundabend Road
                                                                    [Street]

Tarrytown,                              , New York        10591                      . This Property is in
[City]                                                     [Zip Code]
                                   Westchester
                                                   County. It has the following legal description:

(B) All buildings and other improvements that are located on the Property described in subparagraph (A) of this section;
(C) All rights in other property that I have as owner of the Property described in subparagraph (A) of this section. These rights are known as "easements and appurtenances attached to the Property";
(D) All rights that I have in the land which lies in the streets or roads in front of, or next to, the Property described in subparagraph (A) of this section;
(E) All fixtures that are now or in the future will be on the Property described in subparagraphs (A) and (B) of this section;
(F) All of the rights and property described in subparagraphs (B) through (E) of this section that I acquire in the future; and
(G) All replacements of or additions to the Property described in subparagraphs (B) through (F) of this section.

## BORROWER'S RIGHT TO MORTGAGE THE PROPERTY AND BORROWER'S OBLIGATION TO DEFEND OWNERSHIP OF THE PROPERTY

I promise that: (A) I lawfully own the Property; (B) I have the right to mortgage, grant and convey the Property to Lender; and (C) there are no outstanding claims or charges against the Property, except for those which are of public record.

I give a general warranty of title to Lender. This means that I will be fully responsible for any losses which Lender suffers because someone other than myself has some of the rights in the Property which I promise that I have. I promise that I will defend my ownership of the Property against any claims of such rights.

## PLAIN LANGUAGE SECURITY INSTRUMENT

This Security Instrument contains promises and agreements that are used in real property security instruments all over the country. It also contains other promises and agreements that vary, to a limited extent, in different parts of the country. My promises and agreements are stated in "plain language."

Form 3033 10/91

## COVENANTS

I promise and I agree with Lender as follows:

### 1. BORROWER'S PROMISE TO PAY

I will pay to Lender on time principal and interest due under the Note and any prepayment and late charges due under the Note.

### 2. MONTHLY PAYMENTS FOR TAXES AND INSURANCE

#### (A) Borrower's Obligations

I will pay to Lender all amounts necessary to pay for taxes, assessments, water frontage charges and other similar charges, sewer rents, leasehold payments or ground rents (if any), hazard or property insurance covering the Property, and flood insurance (if any). If Lender required mortgage insurance as a condition of making the loan that I promise to pay under the Note, (i) I also will pay to Lender all amounts necessary to pay for mortgage insurance, and (ii) if, under Paragraph 8 below, instead of paying for mortgage insurance I am required to pay Lender an amount equal to the cost of mortgage insurance, I will pay this amount to Lender. I will pay all of these amounts to Lender unless Lender tells me, in writing, that I do not have to do so, or unless the law requires otherwise. I will make these payments on the same day that my monthly payments of principal and interest are due under the Note.

My payments under this Paragraph 2 will be for the items listed in (i) through (vi) below, which are called "Escrow Items":
(i) The estimated yearly taxes, assessments, water frontage charges and other similar charges, and sewer rents on the Property which under the law may be superior to this Security Instrument as a lien on the Property. Any claim, demand or charge that is made against property because an obligation has not been fulfilled is known as a "lien";
(ii) The estimated yearly leasehold payments or ground rents on the Property (if any);
(iii) The estimated yearly premium for hazard or property insurance covering the Property;
(iv) The estimated yearly premium for flood insurance covering the Property (if any);
(v) The estimated yearly premium for mortgage insurance (if any); and
(vi) The estimated yearly amount I may be required to pay Lender under Paragraph 8 below instead of the payment of the estimated yearly premium for mortgage insurance (if any).

Lender will estimate from time to time the amount I will have to pay for Escrow Items by using existing assessments and bills and reasonable estimates of the amount I will have to pay for Escrow Items in the future, unless the law requires Lender to use another method for determining the amount I am to pay. The amounts that I pay to Lender for Escrow Items under this Paragraph 2 will be called the "Funds." The Funds are pledged as additional security for all Sums Secured.

The law puts limits on the total amount of Funds Lender can at any time collect and hold. This total amount cannot be more than the maximum amount a lender for a "federally related mortgage loan" could require me to place in an "escrow account" under the federal law called the "Real Estate Settlement Procedures Act of 1974," as that law may be amended from time to time. If there is another law that imposes a lower limit on the total amount of Funds Lender can collect and hold, Lender will be limited to the lower amount.

#### (B) Lender's Obligations

Lender will keep the Funds in a savings or banking institution which has its deposits insured by a federal agency, instrumentality, or entity, or in any Federal Home Loan Bank. If Lender is such a savings or banking institution, Lender may hold the Funds. Except as described in this Paragraph 2, Lender will use the Funds to pay the Escrow Items. Lender will give to me, without charge, an annual accounting of the Funds. That accounting must show all additions to and deductions from the Funds and the reason for each deduction.

Lender may not charge me for holding or keeping the Funds, for using the Funds to pay Escrow Items, for making a yearly analysis of my payment of Funds or for receiving, verifying and totaling assessments and bills. However, Lender may charge me for these services if Lender pays me interest on the Funds and if the law permits Lender to make such a charge. Lender also may require me to pay a one-time charge for an independent real estate tax reporting service used by Lender in connection with my loan, unless the law does not permit Lender to make such a charge. Lender will not be required to pay me any interest or earnings on the Funds unless either (i) Lender and I agree in writing, at the time I sign this Security Instrument, that Lender will pay interest on the Funds; or (ii) the law requires Lender to pay interest on the Funds.

#### (C) Adjustments to the Funds

Under the law, there is a limit on the amount of Funds Lender may hold. If the amount of Funds held by Lender exceeds this limit, then the law requires Lender to account to me in a special manner for the excess amount of Funds. There will be an excess amount if, at any time, the amount of Funds which Lender is holding or keeping is greater than the amount of Funds Lender is allowed to hold under the law.

Form 3033 10/91

Initials: _BR Or_

If, at any time, Lender has not received enough Funds to make the payments of Escrow Items when the payments are due, Lender may tell me in writing that an additional amount is necessary. I will pay to Lender whatever additional amount is necessary to pay the Escrow Items in full. Lender will determine the number of monthly payments I have in which to pay that additional amount, but the number of payments will not be more than twelve.

When I have paid all of the Sums Secured, Lender will promptly refund to me any Funds that are then being held by Lender. If, under Paragraph 21 below, Lender either acquires or sells the Property, then before the acquisition or sale, Lender will use any Funds which Lender is holding at the time of the acquisition or sale to reduce the Sums Secured.

## 3. APPLICATION OF BORROWER'S PAYMENTS

Unless the law requires otherwise, Lender will apply each of my payments under the Note and under Paragraphs 1 and 2 above in the following order and for the following purposes:

First, to pay any prepayment charges due under the Note;

Next, to pay the amounts due to Lender under Paragraph 2 above;

Next, to pay interest due;

Next, to pay principal due; and

Last, to pay any late charges due under the Note.

## 4. BORROWER'S OBLIGATION TO PAY CHARGES, ASSESSMENTS AND CLAIMS

I will pay all taxes, assessments, water frontage charges and other similar charges, sewer rents, and any other charges and fines that may be imposed on the Property and that may be superior to this Security Instrument. I will also make payments due under my lease if I am a tenant on the Property and I will pay ground rents (if any) due on the Property. I will do this either by making the payments to Lender that are described in Paragraph 2 above or, if I am not required to make payments under Paragraph 2, by making the payments on time to the person owed them. (In this Security Instrument, the word "person" means any person, organization, governmental authority or other party.) If I make direct payments, then promptly after making any of those payments I will give Lender a receipt which shows that I have done so. If I make payment to Lender under Paragraph 2, I will give Lender all notices or bills that I receive for the amounts due under this Paragraph 4.

I will promptly pay or satisfy all liens against the Property that may be superior to this Security Instrument. However, this Security Instrument does not require me to satisfy a superior lien if: (A) I agree, in writing, to pay the obligation which gave rise to the superior lien and Lender approves the way in which I agree to pay that obligation; or (B) in good faith, I argue or defend against the superior lien in a lawsuit so that, during the lawsuit, the superior lien may not be enforced; or (C) I secure from the holder of that other lien an agreement, approved in writing by Lender, that the lien of this Security Instrument is superior to the lien held by that person. If Lender determines that any part of the Property is subject to a superior lien, Lender may give Borrower a notice identifying the superior lien. Borrower shall pay or satisfy the superior lien or take one or more of the actions set forth above within 10 days of the giving of notice.

## 5. BORROWER'S OBLIGATION TO MAINTAIN HAZARD INSURANCE OR PROPERTY INSURANCE

I will obtain hazard or property insurance to cover all buildings and other improvements that now are or in the future will be located on the Property. The insurance must cover loss or damage caused by fire, hazards normally covered by "extended coverage" hazard insurance policies and other hazards for which Lender requires coverage, including floods and flooding. The insurance must be in the amounts and for the periods of time required by Lender. I may choose the insurance company, but my choice is subject to Lender's approval. Lender may not refuse to approve my choice unless the refusal is reasonable. If I do not maintain the insurance coverage described above, Lender may obtain insurance coverage to protect Lender's rights in the Property in accordance with Paragraph 7 below.

All of the insurance policies and renewals of those policies must include what is known as a "standard mortgage clause" to protect Lender. The form of all policies and renewals must be acceptable to Lender. Lender will have the right to hold the policies and renewals. If Lender requires, I will promptly give Lender all receipts of paid premiums and renewal notices that I receive.

If there is a loss or damage to the Property, I will promptly notify the insurance company and Lender. If I do not promptly prove to the insurance company that the loss or damage occurred, then Lender may do so.

The amount paid by the insurance company is called "proceeds." The proceeds will be used to repair or to restore the damaged Property unless: (A) it is not economically feasible to make the repairs or restoration; or (B) the use of the proceeds for that purpose would lessen the protection given to Lender by this Security Instrument; or (C) Lender and I have agreed in writing not to use the proceeds for that purpose. If the repair or restoration is not economically feasible or if it would lessen Lender's protection under this Security Instrument, then the proceeds will be used to reduce the amount that I owe to Lender under the Note and under this Security Instrument. If any of the proceeds remain after the amount that I owe to Lender has been paid in full, the remaining proceeds will be paid to me.

Form 3033 10/91

If I abandon the Property, or if I do not answer, within 30 days, a notice from Lender stating that the insurance company has offered to settle a claim, Lender may collect the proceeds. Lender may use the proceeds to repair or restore the Property or to pay the Sums Secured. The 30-day period will begin when the notice is given.

If any proceeds are used to reduce the amount of principal which I owe to Lender under the Note, that use will not delay the due date or change the amount of any of my monthly payments under the Note and under Paragraphs 1 and 2 above. However, Lender and I may agree in writing to those delays or changes.

If Lender acquires the Property under Paragraph 21 below, all of my rights in the insurance policies will belong to Lender. Also, all of my rights in any proceeds which are paid because of damage that occurred before the Property is acquired by Lender or sold will belong to Lender. However, Lender's rights in those proceeds will not be greater than the Sums Secured immediately before the Property is acquired by Lender or sold.

## 6. BORROWER'S OBLIGATIONS TO OCCUPY THE PROPERTY, TO MAINTAIN AND PROTECT THE PROPERTY, AND TO FULFILL ANY LEASE OBLIGATIONS; BORROWER'S LOAN APPLICATION

### (A) Borrower's Obligations to Occupy the Property

I will occupy the Property and use the Property as my principal residence within sixty days after I sign this Security Instrument. I will continue to occupy the Property and to use the Property as my principal residence for at least one year. The one-year period will begin when I first occupy the Property. However, I will not have to occupy the Property and use the Property as my principal residence within the time frames set forth above if Lender agrees in writing that I do not have to do so. Lender may not refuse to agree unless the refusal is reasonable. I also will not have to occupy the Property and use the Property as my principal residence within the time frames set forth above if extenuating circumstances exist which are beyond my control.

### (B) Borrower's Obligations to Maintain and Protect the Property

I will keep the Property in good repair. I will not destroy, damage or harm the Property, and I will not allow the Property to deteriorate.

I will be "in default" under this Security Instrument if I fail to keep any promise or agreement made in this Security Instrument. I also will be in default under this Security Instrument if any civil or criminal action or proceeding for "forfeiture" (that is, a legal action or proceeding to require the Property, or any part of the Property, to be given up) is begun and Lender determines, in good faith, that this action or proceeding could result in a court ruling (i) that would require forfeiture of the Property or (ii) that would materially impair the lien of this Security Instrument or Lender's rights in the Property. I may correct the default by obtaining a court ruling that dismisses the legal action or proceeding, if Lender determines, in good faith, that this court ruling prevents forfeiture of my interests in the Property and also prevents any material impairment of (i) the lien created by this Security Instrument or (ii) Lender's rights in the Property. If I correct the default, I will have the right to have enforcement of this Security Instrument discontinued, as provided in Paragraph 18 below, even if Lender has required immediate payment in full.

### (C) Borrower's Obligations to Fulfill Any Lease Obligations

If I do not own but am a tenant on the Property, I will fulfill all my obligations under my lease. I also agree that, if I acquire the fee title to the Property, my lease interest and the fee title will not merge unless Lender agrees to the merger in writing.

### (D) Borrower's Loan Application

If, during the application process for the loan that I promise to pay under the Note, I made false or inaccurate statements to Lender about information important to Lender in determining my eligibility for the loan, Lender will treat my actions as a default under this Security Instrument. False or inaccurate statements about information important to Lender would include a misrepresentation of my intentions to occupy the Property as a principal residence. This is just one example of a false or inaccurate statement of important information. Also, if during the loan application process I failed to provide Lender with information important to Lender in determining my eligibility for the loan, Lender will treat this as a default under this Security Instrument.

## 7. LENDER'S RIGHT TO PROTECT ITS RIGHTS IN THE PROPERTY

If: (A) I do not keep my promises and agreements made in this Security Instrument, or (B) someone, including me, begins a legal proceeding that may significantly affect Lender's rights in the Property (such as a legal proceeding in bankruptcy, in probate, for condemnation or forfeiture, or to enforce laws or regulations), Lender may do and pay for whatever is necessary to protect the value of the Property and Lender's rights in the Property. Lender's actions may include appearing in court, paying reasonable attorneys' fees and entering on the Property to make repairs. Although Lender may take action under this Paragraph 7, Lender does not have to do so.

Form 3033 10/91

Initials: BR R

I will pay to Lender any amounts, with interest, which Lender spends under this Paragraph 7. I will pay those amounts to Lender when Lender sends me a notice requesting that I do so. I will also pay interest on those amounts at the Note rate. Interest on each amount will begin on the date that the amount is spent by Lender. However, Lender and I may agree in writing to terms of payment that are different from those in this paragraph. This Security Instrument will protect Lender in case I do not keep this promise to pay those amounts with interest.

## 8. MORTGAGE INSURANCE

If Lender required mortgage insurance as a condition of making the loan that I promise to pay under the Note, I will pay the premiums for the mortgage insurance. If, for any reason, the mortgage insurance coverage lapses or ceases to be in effect, I will pay the premiums for substantially equivalent mortgage insurance coverage. However, the cost of this mortgage insurance coverage must be substantially equivalent to the cost to me of the previous mortgage insurance coverage, and the alternate mortgage insurer must be approved by Lender.

If substantially equivalent mortgage insurance coverage is not available, Lender will establish a "loss reserve" as a substitute for the mortgage insurance coverage. I will pay to Lender each month an amount equal to one-twelfth of the yearly mortgage insurance premium (as of the time the coverage lapsed or ceased to be in effect). Lender will retain these payments, and will use these payments to pay for losses that the mortgage insurance would have covered. Lender may choose to no longer require loss reserve payments, if mortgage insurance coverage again becomes available and is obtained. The mortgage insurance coverage must be in the amount and for the period of time required by Lender. The Lender must approve the insurance company providing the coverage.

I will pay the mortgage insurance premiums, or the loss reserve payments, until the requirement for mortgage insurance ends according to my written agreement with Lender or according to law. Lender may require me to pay the premiums, or the loss reserve payments, in the manner described in Paragraph 2 above.

## 9. LENDER'S RIGHT TO INSPECT THE PROPERTY

Lender, and others authorized by Lender, may enter on and inspect the Property. They must do so in a reasonable manner and at reasonable times. Before or at the time an inspection is made, Lender must give me notice stating a reasonable purpose for the inspection.

## 10. AGREEMENTS ABOUT CONDEMNATION OF THE PROPERTY

A taking of property by any governmental authority by eminent domain is known as "condemnation." I give to Lender my right: (A) to proceeds of all awards or claims for damages resulting from condemnation or other governmental taking of the Property; and (B) to proceeds from a sale of the Property that is made to avoid condemnation. All of those proceeds will be paid to Lender.

If all of the Property is taken, the proceeds will be used to reduce the Sums Secured. If any of the proceeds remain after the amount that I owe to Lender has been paid in full, the remaining proceeds will be paid to me.

Unless Lender and I agree otherwise in writing, if only a part of the Property is taken, and the fair market value of the Property immediately before the taking either is equal to, or greater than, the amount of the Sums Secured immediately before the taking, the amount that I owe to Lender will be reduced only by the amount of proceeds multiplied by a fraction. That fraction is as follows: (A) the total amount of the Sums Secured immediately before the taking, divided by (B) the fair market value of the Property immediately before the taking. The remainder of the proceeds will be paid to me.

Unless Lender and I agree otherwise in writing or unless the law requires otherwise, if only a part of the Property is taken, and the fair market value of the Property immediately before the taking is less than the amount of the Sums Secured immediately before the taking, the proceeds will be used to reduce the Sums Secured.

If I abandon the Property, or if I do not answer, within 30 days, a notice from Lender stating that a governmental authority has offered to make a payment or to settle a claim for damages, Lender has the authority to collect the proceeds. Lender may then use the proceeds to repair or restore the Property or to reduce the Sums Secured. The 30-day period will begin when the notice is given.

If any proceeds are used to reduce the amount of principal which I owe to Lender under the Note, that use will not delay the due date or change the amount of any of my monthly payments under the Note and under Paragraphs 1 and 2 above. However, Lender and I may agree in writing to those delays or changes.

Form 3033 10/91

Co

## 11. CONTINUATION OF BORROWER'S OBLIGATIONS AND OF LENDER'S RIGHTS

### (A) Borrower's Obligations

Lender may allow a person who takes over my rights and obligations to delay or to change the amount of the monthly payments of principal and interest under the Note or under this Security Instrument. Even if Lender does this, however, that person and I will both still be fully obligated under the Note and under this Security Instrument.

Lender may allow those delays or changes for a person who takes over my rights and obligations, even if Lender is requested not to do so. Lender will not be required to bring a lawsuit against such a person for not fulfilling obligations under the Note or under this Security Instrument, even if Lender is requested to do so.

### (B) Lender's Rights

Even if Lender does not exercise or enforce any right of Lender under this Security Instrument or under the law, Lender will still have all of those rights and may exercise and enforce them in the future. Even if Lender obtains insurance, pays taxes, or pays other claims, charges or liens against the Property, Lender will have the right under Paragraph 21 below to demand that I make immediate payment in full of the amount that I owe to Lender under the Note and under this Security Instrument.

## 12. OBLIGATIONS OF BORROWER AND OF PERSONS TAKING OVER BORROWER'S RIGHTS OR OBLIGATIONS

Any person who takes over my rights or obligations under this Security Instrument will have all of my rights and will be obligated to keep all of my promises and agreements made in this Security Instrument. Similarly, any person who takes over Lender's rights or obligations under this Security Instrument will have all of Lender's rights and will be obligated to keep all of Lender's agreements made in this Security Instrument.

If more than one person signs this Security Instrument as Borrower, each of us is fully obligated to keep all of Borrower's promises and obligations contained in this Security Instrument. Lender may enforce Lender's rights under this Security Instrument against each of us individually or against all of us together. This means that any one of us may be required to pay all of the Sums Secured. However, if one of us does not sign the Note: (A) that person is signing this Security Instrument only to give that person's rights in the Property to Lender under the terms of this Security Instrument; and (B) that person is not personally obligated to pay the Sums Secured; and (C) that person agrees that Lender may agree with the other Borrowers to delay enforcing any of Lender's rights or to modify or make any accommodations with regard to the terms of this Security Instrument or the Note without that person's consent.

## 13. LOAN CHARGES

If the loan secured by this Security Instrument is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the loan exceed permitted limits: (A) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (B) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge under the Note.

## 14. NOTICES REQUIRED UNDER THIS SECURITY INSTRUMENT

Any notice that must be given to me under this Security Instrument will be given by delivering it or by mailing it by first class mail unless applicable law requires use of another method. The notice will be addressed to me at the address stated in the section above titled "Description of the Property." A notice will be given to me at a different address if I give Lender a notice of my different address. Any notice that must be given to Lender under this Security Instrument will be given by mailing it to Lender's address stated in subparagraph (C) of the section above titled "Words Used Often In This Document." A notice will be mailed to Lender at a different address if Lender gives me a notice of the different address. A notice required by this Security Instrument is given when it is mailed or when it is delivered according to the requirements of this Paragraph 14 or of applicable law.

## 15. LAW THAT GOVERNS THIS SECURITY INSTRUMENT

This Security Instrument is governed by federal law and the law that applies in the place where the Property is located. If any term of this Security Instrument or of the Note conflicts with the law, all other terms of this Security Instrument and of the Note will still remain in effect if they can be given effect without the conflicting term. This means that any terms of this Security Instrument and of the Note which conflict with the law can be separated from the remaining terms, and the remaining terms will still be enforced.

Form 3033 10/91

Initials: _____

Co

**16. BORROWER'S COPY**

I will be given one conformed copy of the Note and of this Security Instrument.

**17. AGREEMENTS ABOUT LENDER'S RIGHTS IF THE PROPERTY IS SOLD OR TRANSFERRED**

Lender may require immediate payment in full of all Sums Secured by this Security Instrument if all or any part of the Property, or if any right in the Property, is sold or transferred without Lender's prior written permission. Lender also may require immediate payment in full if a beneficial interest in Borrower is sold or transferred and Borrower is not a natural person. However, Lender shall not require immediate payment in full if this is prohibited by federal law on the date of this Security Instrument.

If Lender requires immediate payment in full under this Paragraph 17, Lender will give me a notice which states this requirement. The notice will give me at least 30 days to make the required payment. The 30-day period will begin on the date the notice is mailed or delivered. If I do not make the required payment during that period, Lender may act to enforce its rights under this Security Instrument without giving me any further notice or demand for payment.

**18. BORROWER'S RIGHT TO HAVE LENDER'S ENFORCEMENT OF THIS SECURITY INSTRUMENT DISCONTINUED**

Even if Lender has required immediate payment in full, I may have the right to have enforcement of this Security Instrument discontinued. I will have this right at any time before sale of the Property under any power of sale granted by this Security Instrument or at any time before a judgment has been entered enforcing this Security Instrument if I meet the following conditions:

(A) I pay to Lender the full amount that then would be due under this Security Instrument and the Note as if immediate payment in full had never been required; and

(B) I correct my failure to keep any of my other promises or agreements made in this Security Instrument; and

(C) I pay all of Lender's reasonable expenses in enforcing this Security Instrument including, for example, reasonable attorneys' fees; and

(D) I do whatever Lender reasonably requires to assure that Lender's rights in the Property, Lender's rights under this Security Instrument, and my obligations under the Note and under this Security Instrument continue unchanged.

If I fulfill all of the conditions in this Paragraph 18, then the Note and this Security Instrument will remain in full effect as if immediate payment in full had never been required. However, I will not have the right to have Lender's enforcement of this Security Instrument discontinued if Lender has required immediate payment in full under Paragraph 17 above.

**19. NOTE HOLDER'S RIGHT TO SELL THE NOTE OR AN INTEREST IN THE NOTE; BORROWER'S RIGHT TO NOTICE OF CHANGE OF LOAN SERVICER**

The Note, or an interest in the Note, together with this Security Instrument, may be sold one or more times. I may not receive any prior notice of these sales.

The entity that collects my monthly payments due under the Note and this Security Instrument is called the "Loan Servicer." There may be a change of the Loan Servicer as a result of the sale of the Note; there also may be one or more changes of the Loan Servicer unrelated to a sale of the Note. The law requires that I be given written notice of any change of the Loan Servicer. The written notice must be given in the manner required under Paragraph 14 above and under applicable law. The notice will state the name and address of the new Loan Servicer, and also tell me the address to which I should make my payments. The notice also will contain any other information required by the law.

**20. CONTINUATION OF BORROWER'S OBLIGATIONS TO MAINTAIN AND PROTECT THE PROPERTY**

The federal laws and the laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection are called "Environmental Laws." I will not do anything affecting the Property that violates Environmental Laws, and I will not allow anyone else to do so.

Environmental Laws classify certain substances as toxic or hazardous. There are other substances that are considered hazardous for purposes of this Paragraph 20. These are gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials. The substances defined as toxic or hazardous by Environmental Laws and the substances considered hazardous for purposes of this Paragraph 20 are called "Hazardous Substances."

Form 3033 10/91

I will not permit Hazardous Substances to be present on the Property. I will not use or store Hazardous Substances on the Property, and I will not allow anyone else to do so. I also will not dispose of Hazardous Substances on the Property, or release any Hazardous Substance on the Property, and I will not allow anyone else to do so. However, I may permit the presence on the Property of small quantities of Hazardous Substances that are generally recognized as appropriate for normal residential use and maintenance of the Property, and I may use or store these small quantities on the Property. In addition, unless the law requires removal or other action, the buildings, the improvements and the fixtures on the Property are permitted to contain asbestos and asbestos-containing materials if the asbestos and asbestos-containing materials are undisturbed and "non-friable" (that is, not easily crumbled by hand pressure).

If I know of any investigation, claim, demand, lawsuit or other action by the government or by a private party involving the Property and any Hazardous Substance or Environmental Laws, I will promptly notify the Lender in writing. If the government notifies me (or I otherwise learn) that it is necessary to remove a Hazardous Substance affecting the Property or to take other remedial actions, I will promptly take all necessary remedial actions as required by Environmental Laws.

## 21. LENDER'S RIGHTS IF BORROWER FAILS TO KEEP PROMISES AND AGREEMENTS

Except as provided in Paragraph 17 above, if all of the conditions stated in subparagraphs (A), (B) and (C) of this Paragraph 21 are met, Lender may require that I pay immediately the entire amount then remaining unpaid under the Note and under this Security Instrument. Lender may do this without making any further demand for payment. This requirement is called "immediate payment in full."

If Lender requires immediate payment in full, Lender may bring a lawsuit to take away all of my remaining rights in the Property and have the Property sold. At this sale Lender or another person may acquire the Property. This is known as "foreclosure and sale." In any lawsuit for foreclosure and sale, Lender will have the right to collect all costs and disbursements and additional allowances allowed by law and will have the right to add all reasonable attorneys' fees to the amount I owe Lender, which fees shall become part of the Sums Secured.

Lender may require immediate payment in full under this Paragraph 21 only if all of the following conditions are met:

(A) I fail to keep any promise or agreement made in this Security Instrument, including the promises to pay when due the Sums Secured.

(B) Lender sends to me, in the manner described in Paragraph 14 above, a notice that states:
    (i) The promise or agreement that I failed to keep;
    (ii) The action that I must take to correct that default;
    (iii) A date by which I must correct the default. That date must be at least 30 days from the date on which the notice is given;
    (iv) That if I do not correct the default by the date stated in the notice, Lender may require immediate payment in full, and Lender or another person may acquire the Property by means of foreclosure and sale;
    (v) That if I meet the conditions stated in Paragraph 18 above, I will have the right to have Lender's enforcement of this Security Instrument discontinued and to have the Note and this Security Instrument remain fully effective as if immediate payment in full had never been required; and
    (vi) That I have the right in any lawsuit for foreclosure and sale to argue that I did keep my promises and agreements under the Note and under this Security Instrument, and to present any other defenses that I may have.

(C) I do not correct the default stated in the notice from Lender by the date stated in that notice.

## 22. LENDER'S OBLIGATION TO DISCHARGE THIS SECURITY INSTRUMENT

When Lender has been paid all amounts due under the Note and under this Security Instrument, Lender will discharge this Security Instrument by delivering a certificate stating that this Security Instrument has been satisfied. I will not be required to pay Lender for the discharge, but I will pay all costs of recording the discharge in the proper official records.

## 23. AGREEMENTS ABOUT NEW YORK LIEN LAW

I will receive all amounts lent to me by Lender subject to the trust fund provisions of Section 13 of the New York Lien Law. This means that if, on the date this Security Instrument is recorded, construction or other work on any building or other improvement located on the Property has not been completed for at least four months, I will: (A) hold all amounts which I receive and which I have a right to receive from Lender under the Note as a "trust fund"; and (B) use those amounts to pay for that construction or work before I use them for any other purpose. The fact that I am holding those amounts as a "trust fund" means that for any building or other improvement located on the Property I have a special responsibility under the law to use the amount in the manner described in this Paragraph 23.

Form 3033 10/91

## NEW YORK RIDER TO MORTGAGE

I further promise and agree with Lender as follows:

### 25. CHANGES AND ADDITIONS TO THE MORTGAGE

This Rider makes certain changes and additions to the attached Mortgage. Whenever the terms, conditions and promises contained in the Mortgage (Paragraphs 1 to 24) differ or are in conflict with this Rider, the provisions of this Rider will control.

### 26. TAXES AND INSURANCE

All reference made in the Mortgage to taxes, assessments and ground rents shall be deemed to include sewer rent and water charges and all references to hazard insurance shall be deemed to include flood insurance.

### 27. FLOOD INSURANCE

If I am advised that Lender requires it, I will obtain flood insurance in the amount of the unpaid principal balance I owe or the maximum amount obtainable, whichever is less.

### 28. LENDER'S RIGHTS TO INSURANCE PROCEEDS IN THE EVENT OF LOSS

The fourth and fifth unnumbered subparagraphs of Paragraph 5 of the Mortgage are changed to read as follows:

"The amount paid by the insurance company is called "proceeds". The Lender, in accordance with Section 254, Real Property Law, may use the proceeds to reduce the amount I owe to Lender under the Note and under this Mortgage (whether or not repairs have been made by me), or Lender may release the proceeds to me for use in the repair or restoration of the damaged Property."

### 29. INTEREST ON AMOUNTS SPENT BY LENDER TO PROTECT THE PROPERTY OR          LENDER'S RIGHTS IN THE PROPERTY

I agree to pay interest at the same rate stated in the Note or at the highest rate that the law allows, whichever is higher, on all amounts that I must repay Lender which Lender may spend to protect the Property of Lender's rights in the Property, all as described in Paragraph 7 of the Mortgage.

### 30. NOTICE TO BORROWER

Lender is not required to give me any notice before taking any action to protect the Property or Lender's rights in the Property or to make an inspection of the Property.

### 31. AGREEMENTS ABOUT CONDEMNATION

The second subparagraph of Paragraph 10 of the Mortgage is changed to read as follows:

"If all or any part of the Property is taken, the proceeds will be used to reduce the amount that I owe to lender under the Note and under the Mortgage unless Lender and I agree in writing to do otherwise. The remainder of the proceeds, if any, will be paid to me. If all of the Property is

taken, I agree to pay to Lender the difference between the interest paid (if any) on the proceeds by taking authority and interest stated in the Note."

## 32. AGREEMENTS ABOUT LENDER'S RIGHTS IF PROPERTY IS SOLD, TRANSFERRED OR ENCUMBERED

The following is added to Paragraph 17 after the first sentence thereof:

"A Mortgage which is subordinate to the lien of this Mortgage shall constitute a transfer hereunder which would require lender's written permission which shall not be unreasonably withheld."

## 33. Paragraph 18 of the Mortgage will not be effective.

## 34. LENDER'S RIGHTS IF BORROWER FAILS TO KEEP PROMISES

Paragraph 21 of the Mortgage is changed to read as follows:

"If I fail to keep any promise or agreement made in this Mortgage, including the promises to pay when due the amount I owe to Lender, the Lender may require that I pay immediately the entire amount then remaining unpaid under the Note and under this Mortgage. Lender may do this without making any further demand for payment. This requirement will be called 'Immediate Payment in Full'."

"If Lender requires the Immediate Payment in Full, I agree to pay interest on the entire amount remaining unpaid at the rate stated in the Note or the highest rate then permitted by law, whichever is higher, from the date I failed to keep any promise or agreement made in the Note or in the Mortgage."

"In any lawsuit for foreclosure and sale, Lender will have the right to (a) collect all costs allowed by law; (b) have the Property sold as one parcel; and (c) have a Receiver appointed by the court without first giving notice to me without regard to the value of the Property."

## 35. LENDER'S OBLIGATION TO PREPARATION OF DISCHARGE

The second sentence of Paragraph 22 of the Mortgage will be changed to read as follows:

"I will be required to pay Lender's Attorney for the discharge and I will pay all costs of recording discharge in the proper official records."

## 36. LENDER'S RIGHTS TO RENTAL PAYMENT FROM ME

The following subparagraph is added to Paragraph 21 of the Mortgage:

"If the Lender requires Immediate Payment in Full, I agree to pay monthly in advance to Lender or any court appointed Receiver, the fair and reasonable value for my use and occupancy of the Property. If I fail to make such payment, the Lender or Receiver may sue to collect it or to remove me from the Property."

## 37. STATEMENT OF AMOUNT DUE AND OF NO DEFENSE

Within ten days after request, I will give the Lender a signed written statement, acknowledged before a notary indicating the amount due under the Note and the Mortgage and stating whether I have any claims or defenses which would offset or reduce this amount.

## 38. LATE CHARGES FOR OVERDUE PAYMENTS

If the Lender has not received the full amount of any monthly payments by the end of 15 calendar days after the date it is due, I will pay a late charge to the Lender. The amount of the charge will be two (2%) percent of my total overdue payment of principal, interest and tax and insurance escrow.

## 39. ADDITIONAL CHARGES

I agree to pay all reasonable charges in connection with the servicing of this loan including but not limited to obtaining tax searches and bills and in processing insurance loss payments, ownership transfers, releases, easements, consents, extensions, modifications, special agreements, assignments, reduction certificates and satisfactions of mortgage.

If Lender requires Immediate Payment in Full and this Mortgage is referred by Lender to an attorney to begin a foreclosure proceeding, then I agree to pay, or to reimburse, Lender for all reasonable attorney's fees, disbursements and costs incurred or paid by Lender as a result of such referral whether or not a foreclosure proceeding has begun. I further agree that in any foreclosure of this Mortgage the Lender shall be entitled to recover in such foreclosure the amount paid, or to be paid, by lender for its attorney to handle the foreclosure proceeding, including all expenses, costs and distributions of such attorney, and that this amount shall be in addition to any amount which by law the Lender is entitled to assess, tax, or recover without proving such payment by the Lender.

If I, either by myself or together with other signers of this Mortgage, file for protections from creditors under any provision of the federal Bankruptcy Code or any state insolvency law, then I agree to pay, or reimburse, Lender for its reasonable attorney fees, disbursement and cost incurred, or paid, by Lender as a result of such filing, including but not limited to, the filing a Proof of Claim, appearing at hearings and meetings and submitting motions which activity the Lender feels, in its sole discretion, is necessary to protect the Lender and the lien of this Mortgage.

## 40. AGREEMENT TO PAY INTEREST ON ARREARS IN THE EVENT OF A BANKRUPTCY FILING

I agree that if as a result of my taking advantage of any rights I have under the federal Bankruptcy Code or any state insolvency law, I am permitted to defer the payment of all or part of the amount due on this Mortgage, then I will pay to Lender interest on such deferred payment (including the part of the deferred payment that represents deferred interest) from the date that the payment originally became due under the Mortgage to the date to which they are deferred. Such interest shall be at a rate which is equal to the interest rate provided for in the Note.

## 41. AGREEMENTS THAT APPLY TO BUILDING LOAN

If this Mortgage is made pursuant to a certain Agreement for a building loan between the Borrower and the Lender dated this date and filed in the Office of the recording officer of the County where the property is located, it is subject to all terms, conditions and provisions contained in said

Building Loan Agreement. If Borrower fails to keep any of the promises and agreements contained in the Building Loan Agreement, Lender shall require Immediate Payment in Full.

## 42. RIDER PARAGRAPH 25 TO 41 VOID IF MORTGAGE SOLD TO FNMA, GNMA OR FHLMC

If the Federal National Mortgage Association (FNMA), Government National Mortgage Association (GNMA) or the Federal Home Loan Mortgage Corporation (FHLMC) buys all or some of the Lender's rights under the Mortgage and the Note, the promises and agreements in Paragraphs 25 to 40 of this Rider will no longer have any force or effect.

This Rider is a part of the attached Mortgage and by signing below, I agree to all of the above.

WITNESS:

_____

Borrower Bruce Rothman

_____

Borrower Denise Rothman

By _____

AS ATTORNEY-IN-FACT

**24. RIDERS TO THIS SECURITY INSTRUMENT**
If one or more riders are signed by Borrower and recorded together with this Security Instrument, the promises and agreements
of each rider are incorporated as a part of this Security Instrument. [Check applicable box(es)]

☐ Adjustable Rate Rider          ☐ Condominium Rider                  ☐ 1-4 Family Rider
☐ Graduated Payment Rider        ☐ Planned Unit Development Rider     ☐ Biweekly Payment Rider
☐ Balloon Rider                  ☐ Rate Improvement Rider            ☐ Second Home Rider
☐ VA Rider                       ☒ Other(s) [specify]    bank-rider

    BY SIGNING BELOW, I accept and agree to the promises and agreements contained in pages 1 through 10 of this
Security Instrument and in any rider(s) signed by me and recorded with it.
Witnesses:

_____          _____(Seal)
                                          Bruce Rothman                      -Borrower

_____          _____(Seal)
                                          Denise Rothman
                                          By_____
                                          AS ATTORNEY-IN-FACT

_____(Seal)    _____(Seal)
                         -Borrower                                           -Borrower

**STATE OF NEW YORK**                    )
                                         )ss.
County of  **Westchester**               )

    On the **26th**    day of    **August**    in the year    **1999**    before me, the undersigned, a notary public
in and for said state, personally appeared    **Bruce Rothman** ~~and Denise Rothman~~

personally known to me or proved to me on the basis of satisfactory evidence to be the individual(s) whose name(s) is/are
subscribed to the within instrument and acknowledged to me that they    executed the same in their his capacity(ies), and
that by    their    signature(s) on the instrument, the individual(s), or the person upon behalf of which the individual(s) acted,
executed the instrument.

My Commission Expires:

DAVID M FLEISHER
NOTARY PUBLIC STATE OF NEW YORK
NO. 4741452
QUALIFIED IN WESTCHESTER COUNTY
COMMISSION EXPIRES NOV 30, ____

Tax Map Information:

Section    Sheet 29C
Block      132
Lot        3
County of Westchester Town of Greenburgh

Record and Return to:

David M. Fleisher, P.C.
399 Knollwood Road - Suite 213
White Plains, New York 10603

STATE OF NEW YORK          )

COUNTY OF   Westchester    ) SS.:

On the___27th___ day of __August_____199_9_ , before me the
subscriber personally came Bruce Rothman_____ , to me known and
known to me to be the attorney-in-fact of_____Denise Rothman_____

_____and to be the individual described in and who
executed the foregoing instrument and duly acknowledged before me
that he/she executed the same as the act and deed of _____

__Denise Rothman_____ , therein described and for the
purpose therein mentioned by virtue of a certain Power of
Attorney duly executed by the said_____Denise Rothman_____ ,
and recorded simultaneously herewith.

_____
Notary Public

**DAVID M. FLEISHER**
NOTARY PUBLIC, State of New York
No. 4741452
Qualified in Westchester County
Commission Expires  Dec. 30, 197_9_

<u>RECORD AND RETURN TO</u>:

David M. Fleisher P.C.
399 Knollwood Road
Suite 213
White plains, New York 10603

RECORDED BY:
TITLE ASSOCIATES INC.
(212) 758-0060

Sheet:        29C

Block:        132

Lot:          3

The Office of the Westchester County Clerk: This page is part of the instrument; the County Clerk will rely on the information provided on this page for purposes of indexing this instrument. To the best of submitter's knowledge, the information contained on this Recording and Endorsement Cover Page is consistent with the information contained in the attached document.

*512433027ASS002H*

## Westchester County Recording & Endorsement Page

### Submitter Information

| | | | |
|---|---|---|---|
| Name: | CoreLogic Michelle Wymer | Phone: | 803-941-1426 |
| Address 1: | 450 East Boundary St. | Fax: | |
| Address 2: | | Email: | REAL-RA-DOCCREATION.MIT.RES@C |
| City/State/Zip: | Chapin SC 29036 | Reference for Submitter: | 14566888 |

### Document Details

| | | | |
|---|---|---|---|
| Control Number: | **512433027** | Document Type: | **Assignment (ASS)** | |
| Package ID: | 2011083100014001001 | Document Page Count: | **1** | Total Page Count: **2** |

### Parties

|  | 1st PARTY | | | ☐ Additional Parties on Continuation page<br>2nd PARTY | |
|---|---|---|---|---|---|
| 1: | HSBC MORTGAGE CORP USA | - Other | 1: | MORTGAGE ELECTRONIC REGISTRATION SYSTEMS INC | - Other |
| 2: | REPUBLIC CONSUMER LENDING GROUP INC | - Other | 2: | HSBC BANK USA NA   by Nominee | - Other |

### Property

|  |  | ☐ Additional Properties on Continuation page |
|---|---|---|
| Street Address: | 49 ROUNDABEND RD | Tax Designation: 1.23-132-29 |
| City/Town: | GREENBURGH | Village: |

### Cross-References

|  |  | ☐ Additional Cross-Refs on Continuation page |
|---|---|---|
| 1: 26168/00207 | 2: | 3: | 4: |

### Supporting Documents

| Recording Fees | | Mortgage Taxes | |
|---|---|---|---|
| Statutory Recording Fee: | $40.00 | Document Date: | |
| Page Fee: | $10.00 | Mortgage Amount: | |
| Cross-Reference Fee: | $0.50 | | |
| Mortgage Affidavit Filing Fee: | $0.00 | Basic: | $0.00 |
| RP-5217 Filing Fee: | $0.00 | Westchester: | $0.00 |
| TP-584 Filing Fee: | $0.00 | Additional: | $0.00 |
| | | MTA: | $0.00 |
| Total Recording Fees Paid: | **$50.50** | Special: | $0.00 |
| Transfer Taxes | | Yonkers: | $0.00 |
| Consideration: | $0.00 | Total Mortgage Tax: | **$0.00** |
| Transfer Tax: | $0.00 | | |
| Mansion Tax: | $0.00 | Dwelling Type: | Exempt: ☐ |
| Transfer Tax Number: | | Serial #: | |

| | |
|---|---|
| RECORDED IN THE OFFICE OF THE WESTCHESTER COUNTY CLERK | **Record and Return To** |
| Recorded:        09/15/2011 at 01:26 PM<br>Control Number:   **512433027**<br>Witness my hand and official seal | ☐ Pick-up at County Clerk's office |
| Timothy C. Idoni<br>Westchester County Clerk | **CoreLogic Michelle Wymer**<br>**450 East Boundary St.**<br><br>**Chapin, SC 29036**<br>**Attn:  Michelle Wymer** |

Recording Requested By:
**HSBC Bank USA, N.A.**
Prepared By: **Debora C. Cox**
**888-603-9011**
When recorded mail to:
**CoreLogic**
**450 E. Boundary St.**
**Chapin, SC 29036**

Ref Number: ▓▓▓▓▓▓▓
Property Address:
**49  ROUNDABEND RD**
**TARRYTOWN, NY 10591**
Property Location:
**Township of GREENBURGH**
NY0-AM 14566888          8/17/2011                                    ce for Recorder's use

MIN #: ▓▓▓▓▓▓▓                              MERS Phone #:  888-679-6377

## ASSIGNMENT OF MORTGAGE

For Value Received, HSBC MORTGAGE CORPORATION (USA) SUCCESSOR BY MERGER TO
REPUBLIC CONSUMER LENDING GROUP, INC.
, the undersigned holder of the Mortgage described below (herein "Assignor") whose address is **2929 WALDEN
AVE, DEPEW, NY 14043** does hereby grant, sell, assign, transfer and convey unto **MORTGAGE
ELECTRONIC REGISTRATION SYSTEMS, INC. AS NOMINEE FOR HSBC BANK USA, N.A.** whose
address is **3300 S. W. 34TH AVENUE, SUITE 101, OCALA FL 34474** all beneficial interest under that certain
security instrument described below together with the note(s) and obligations therein described and the money due
and to become due thereon with interest and all rights accrued or to accrue under said security instrument:

| | |
|---|---|
| Original Lender: | **REPUBLIC CONSUMER LENDING GROUP, INC.** |
| Made By: | **BRUCE ROTHMAN AND DENISE ROTHMAN** |
| Date of Mortgage: | 8/26/1999 |
| Original Loan Amount: | **$370,000.00** |
| Section: 1.23    Lot: 29    Block: 132 | |

Recorded in **Westchester County, NY** on: 10/4/1999, book 26168, page 207 and instrument number N/A

This assignment is not subject to the requirements of Section 275 of the Real Property Law because it is an
assignment within the secondary mortgage market.

This Mortgage has not been assigned unless otherwise stated below:

IN WITNESS WHEREOF, the undersigned has caused this Assignment of Mortgage to be executed on Dated:
**8/17/2011**

                                        **HSBC MORTGAGE CORPORATION (USA)**
                                        **SUCCESSOR BY MERGER TO REPUBLIC CONSUMER**
                                        **LENDING GROUP, INC.**

                                        By: _____
                                        Jana Pope, Vice President

State of SC, County of **Lexington**

On 8/17/2011, before me, **Frankie Felder**, a Notary Public, personally appeared **Jana Pope, Vice President** of
**HSBC MORTGAGE CORPORATION (USA) SUCCESSOR BY MERGER TO REPUBLIC CONSUMER
LENDING GROUP, INC.** personally known to me, or proved to me on the basis of satisfactory evidence, to be
the person(s) whose name(s) is/are subscribed to the within document and acknowledged to me that he/she/they
executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the document
the person(s) or the entity upon behalf of which the person(s) acted, executed the instrument.

Witness my hand and official seal.

_____
Notary Public: Frankie Felder
My Commission Expires: 11/20/2012



✓

The Office of the Westchester County Clerk: This page is part of the Instrument; the County Clerk will rely on the information provided on this page for purposes of indexing this Instrument. To the best of submitter's knowledge, the information contained on this Recording and Endorsement Cover Page is consistent with the information contained in the attached document.

**\*562723231ASS001V\***

## Westchester County Recording & Endorsement Page

### Submitter Information

Name: Mortgage Service Center- NYLR
Address 1: PO Box 5449
Address 2:
City/State/Zip: Mt Laurel NJ 08054

Phone: 856-917-3329
Fax:
Email: lienrelease@mortgagefamily.com
Reference for Submitter: 6043043-Mortgage Service Center- NYL

### Document Details

Control Number: 562723231
Package ID: 2016092800113001002

Document Type: **Assignment (ASS)**
Document Page Count: **2**
Total Page Count: **3**

### Parties

| 1st PARTY | 2nd PARTY |
|---|---|
| 1: MORTGAGE ELECTRONIC REGISTRATION SYSTEMS INC - Other | 1: HSBC BANK USA N A - Other |
| 2: HSBC BANK USA N A - Other | 2: |

☐ Additional Parties on Continuation page

### Property

☐ Additional Properties on Continuation page

Street Address: 49 ROUNDABEND ROAD
City/Town: GREENBURGH

Tax Designation: 1.23-29-132
Village: TARRYTOWN

### Cross- References

☐ Additional Cross-Refs on Continuation page

1: 26168/00207    2:    3:    4:

### Supporting Documents

### Recording Fees

| | |
|---|---|
| Statutory Recording Fee: | $40.00 |
| Page Fee: | $15.00 |
| Cross-Reference Fee: | $0.50 |
| Mortgage Affidavit Filing Fee: | $0.00 |
| RP-5217 Filing Fee: | $0.00 |
| TP-584 Filing Fee: | $0.00 |
| Total Recording Fees Paid: | **$55.50** |

### Transfer Taxes

| | |
|---|---|
| Consideration: | $0.00 |
| Transfer Tax: | $0.00 |
| Mansion Tax: | $0.00 |
| Transfer Tax Number: | |

### Mortgage Taxes

Document Date:
Mortgage Amount:

| | |
|---|---|
| Basic: | $0.00 |
| Westchester: | $0.00 |
| Additional: | $0.00 |
| MTA: | $0.00 |
| Special: | $0.00 |
| Yonkers: | $0.00 |
| Total Mortgage Tax: | **$0.00** |

Dwelling Type:    Exempt: ☐
Serial #:

### Record and Return To

RECORDED IN THE OFFICE OF THE WESTCHESTER COUNTY CLERK
Recorded: 09/28/2016 at 01:24 PM
Control Number: **562723231**
Witness my hand and official seal

Timothy C.Idoni
Westchester County Clerk

☐ Pick-up at County Clerk's office

**PHH MORTGAGE CORPORATION**
**1760 WEHRLE DRIVE**

**WILLIAMSVILLE , NY 14221**

Recording Requested By:
PHH Mortgage Corporation (PHHM)

When Recorded Return To.

Legal Entity Review Department
PHH Mortgage Corporation (PHHM)
1760 WEHRLE DRIVE
WILLIAMSVILLE, NY 14221

## CORPORATE ASSIGNMENT OF MORTGAGE

Westchester, New York
SELLER'S SERVICING # ▆▆▆▆▆ ROTHMAN"

MIN #: ▆▆▆▆▆▆    SIS #: 1-888-679-6377

Date of Assignment: September 27th, 2016
Assignor MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., AS NOMINEE FOR HSBC BANK USA,
N.A., ITS SUCCESSORS AND ASSIGNS at P.O BOX 2026, FLINT, MI 48501-2026
Assignee: HSBC BANK USA, N.A. at 2929 WALDEN AVE, DEPEW, NY 14043
Executed By: BRUCE ROTHMAN AND DENISE ROTHMAN  To: REPUBLIC CONSUMER LENDING GROUP, INC.
Date of Mortgage: 08/26/1999 Recorded: 10/04/1999 in Book/Reel/Liber: 26168 Page/Folio: 207 as Instrument
No. W01899277 In the County of Westchester, State of New York.

-Assigned Wholly by HSBC MORTGAGE CORPORATION (USA) SUCCESSOR BY MERGER TO REPUBLIC
CONSUMER LENDING GROUP, INC TO MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. AS
NOMINEE FOR HSBC BANK USA, N.A. ITS SUCCESSORS AND ASSIGNS Dated. 08/17/2011 Recorded:
09/15/2011 in Book/Reel/Liber N/A Page/Folio. N/A as Instrument No : 512433027

Section/Block/Lot 1 23-29-132

MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC has a physical address at 1901 E Voorhees Street,
Suite C, Danville, IL 61834 and a mailing address at P.O BOX 2026, FLINT, MI 48501-2026

Property Address: 49 ROUNDABEND ROAD, TARRYTOWN, NY  10591 GREENBURGH
    This Assignment is not subject to the requirements of Section 275 of the Real Property Law because it is an
assignment within the secondary mortgage market

    KNOW ALL MEN BY THESE PRESENTS, that for good and valuable consideration, the receipt and sufficiency of
which is hereby acknowledged, the said Assignor hereby assigns unto the above-named Assignee, the said
Mortgage having an original principal sum of $370,000 00 with interest, secured thereby, and the full benefit of all the
powers and of all the covenants and provisos therein contained, and the said Assignor hereby grants and conveys
unto the said Assignee, the Assignor's interest under the Mortgage.

    TO HAVE AND TO HOLD the said Mortgage, and the said property unto the said Assignee forever, subject to the
terms contained in said Mortgage  IN WITNESS WHEREOF, the assignor has executed these presents the day and
year first above written

MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., AS NOMINEE FOR HSBC BANK USA, N.A , ITS
SUCCESSORS AND ASSIGNS
On September 27th, 2016

By:
JACQUELINE WATKINS, Assistant Secretary

CORPORATE ASSIGNMENT OF MORTGAGE Page 2 of 2

STATE OF New York
COUNTY OF Erie

On the 27th day of September in the year 2016 before me, the undersigned, personally appeared JACQUELINE
WATKINS, Assistant Secretary, personally known to me or proved to me on the basis of satisfactory evidence to be
the individual(s) whose name(s) is(are) subscribed to the within instrument and acknowledged to me that
he/she/they executed the same in his/her/their capacity(ies), and that by his/her/their signature(s) on the instrument,
the individual(s), or the person upon behalf of which the individual(s) acted, executed the instrument

WITNESS my hand and official seal,

REGINA D BRUNDAGE
Notary Expires· 04/15/2017  #01BR6279842
Erie, New York
Qualified in Erie County

The Office of the Westchester County Clerk: This page is part of the instrument; the County Clerk will rely on the information provided on this page for purposes of indexing this instrument. To the best of submitter's knowledge, the information contained on this Recording and Endorsement Cover Page is consistent with the information contained in the attached document.

**\*580263041ASS001T\***

## Westchester County Recording & Endorsement Page

### Submitter Information

| | | | |
|---|---|---|---|
| Name: | Nationwide Title Clearing Inc. | Phone: | (727) 771-4000 |
| Address 1: | 2100 Alt 19 North | Fax: | (555) 555-5555 |
| Address 2: | | Email: | cassandra_craig@nwtc.com |
| City/State/Zip: | Palm Harbor FL 34683 | Reference for Submitter: | 6074015-Nationwide Title Clearing Inc. |

### Document Details

| | | |
|---|---|---|
| Control Number: **580263041** | Document Type: **Assignment (ASS)** | |
| Package ID: 2018012600020001000 | Document Page Count: **2** | Total Page Count: **3** |

### Parties

☐ Additional Parties on Continuation page

| 1ST PARTY | | 2nd PARTY | |
|---|---|---|---|
| 1: HSBC BANK USA N A | - Other | 1: NATIONSTAR MORTGAGE LLC | - Other |
| 2: | | 2: MR COOPER | - Other |

### Property

☐ Additional Properties on Continuation page

| | | | |
|---|---|---|---|
| Street Address: 49 ROUNDABEND ROAD | | Tax Designation: 1.23-132-29 | |
| City/Town: GREENBURGH | | Village: TARRYTOWN | |

### Cross- References

☐ Additional Cross-Refs on Continuation page

| 1: 26168/00207 | 2: | 3: | 4: |
|---|---|---|---|

### Supporting Documents

| Recording Fees | | Mortgage Taxes | |
|---|---|---|---|
| Statutory Recording Fee: | $40.00 | Document Date: | |
| Page Fee: | $15.00 | Mortgage Amount: | |
| Cross-Reference Fee: | $0.50 | | |
| Mortgage Affidavit Filing Fee: | $0.00 | Basic: | $0.00 |
| RP-5217 Filing Fee: | $0.00 | Westchester: | $0.00 |
| TP-584 Filing Fee: | $0.00 | Additional: | $0.00 |
| | | MTA: | $0.00 |
| Total Recording Fees Paid: | $55.50 | Special: | $0.00 |
| Transfer Taxes | | Yonkers: | $0.00 |
| Consideration: | $0.00 | Total Mortgage Tax: | $0.00 |
| Transfer Tax: | $0.00 | | |
| Mansion Tax: | $0.00 | Dwelling Type: | Exempt: ☐ |
| Transfer Tax Number: | | Serial #: | |

| RECORDED IN THE OFFICE OF THE WESTCHESTER COUNTY CLERK | Record and Return To |
|---|---|
| Recorded:    01/26/2018 at 11:12 AM | ☐ Pick-up at County Clerk's office |
| Control Number:    **580263041** | |
| Witness my hand and official seal | |
| *Timothy C. Idoni* | Nationstar Mortgage LLC |
| Timothy C. Idoni | C/O Nationwide Title Clearing, Inc. 2100 Alt. 19 North |
| Westchester County Clerk | |
| | Palm Harbor, FL 34683 |

When Recorded Return To:
Nationstar Mortgage LLC
C/O Nationwide Title Clearing, Inc.
2100 Alt. 19 North
Palm Harbor, FL 34683

## ASSIGNMENT OF MORTGAGE

**FOR GOOD AND VALUABLE CONSIDERATION,** the sufficiency of which is hereby acknowledged, the undersigned, **HSBC BANK USA, NATIONAL ASSOCIATION, WHOSE ADDRESS IS C/O NATIONSTAR MORTGAGE LLC, 8950 CYPRESS WATERS BLVD., COPPELL, TX 75019, (ASSIGNOR),** by these presents does convey, grant, assign, transfer and set over the described Mortgage, as the same has not been consolidated, extended or modified, with all interest secured thereby, all liens, and any rights due or to become due thereon to **NATIONSTAR MORTGAGE LLC D/B/A MR. COOPER, A DELAWARE LIMITED LIABILITY COMPANY, WHOSE ADDRESS IS 8950 CYPRESS WATERS BLVD., COPPELL, TX 75019 (469)549-2000, ITS SUCCESSORS AND ASSIGNS, (ASSIGNEE).**

Said Mortgage is dated 08/26/1999, made by **BRUCE ROTHMAN AND DENISE ROTHMAN** to **REPUBLIC CONSUMER LENDING GROUP, INC.,** in the principal sum of $370,000.00 and recorded on 10/04/1999, in **Liber 26168 and Page 207,** in the office of the Registry of **WESTCHESTER** County, **NY.**

Property ID(S/B/L) Section: 1.23 Block: 132 Lot: 29
Property is commonly known as: 49 ROUNDABEND ROAD TOWN OF GREENBURGH, TARRYTOWN, NY 10591.

See Exhibit attached for Assignments, Modifications etc.

This Assignment is not subject to the requirements of section 275 of the Real Property Law because it is an assignment within the secondary mortgage market.

**Dated this 25th day of January in the year 2018.**
**HSBC BANK USA, NATIONAL ASSOCIATION, by NATIONSTAR MORTGAGE LLC D/B/A MR. COOPER, its Attorney-in-Fact (POA RECORDED: 01/04/2018 INSTR: 580043064)**

*Susan Schotsch*
SUSAN SCHOTSCH
Vice President of Loan Documentation

All persons whose signatures appear above have qualified authority to sign and have reviewed this document and supporting documentation prior to signing.

*C. Telesca*
CHRISTOPHER TELESCA
WITNESS

STATE OF FLORIDA    COUNTY OF PINELLAS
Before me, this 25th day of January in the year 2018, the undersigned, personally appeared Susan Schotsch as Vice President of Loan Documentation for NATIONSTAR MORTGAGE LLC D/B/A MR. COOPER as Attorney-in-Fact for HSBC BANK USA, NATIONAL ASSOCIATION, personally known to me or proved to me on the basis of satisfactory evidence to be the individual(s) whose name(s) is (are) subscribed to the within instrument and acknowledged to me that they executed the same in their capacity(ies), and that by their signature(s) on the instrument, the individual(s), or the person upon behalf of which the individual(s) acted, executed the instrument.

*Michelle Brown*
MICHELLE BROWN
COMM EXPIRES: 10/13/2020

MICHELLE BROWN
Notary Public - State of Florida
My Commission #GG 38514
Expires October 13, 2020

Document Prepared By: Dave LaRose/NTC, 2100 Alt. 19 North, Palm Harbor, FL 34683 (800)346-9152
$55.50

Loan No: 

### Exhibit

Assignment: HSBC MORTGAGE CORPORATION (USA) SUCCESSOR BY MERGER TO REPUBLIC CONSUMER LENDING GROUP, INC. TO MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. AS NOMINEE FOR HSBC BANK USA, N.A., ITS SUCCESSORS AND ASSIGNS DATED 08-17-2011. REC: 09-15-2011 INSTR# 512433027

Assignment: MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. AS NOMINEE FOR HSBC BANK USA, N.A., ITS SUCCESSORS AND ASSIGNS TO HSBC BANK USA, N.A. DATED 09-27-2016. REC: 09-28-2016 INSTR# 562723231



(Page 1 of 12)                                                                                          **Copy**

After Recording Return To:
CoreLogic SolEx
1637 NW 136th Avenue Suite G-100
Sunrise, FL 33323

This Document Prepared By:
*Tiffani Agnew*
NATIONSTAR MORTGAGE LLC
8950 CYPRESS WATERS BLVD
COPPELL, TX 75019

Parcel ID Number ██████████

Original Loan Note Amount: $370,000.00
Current UPB: $216,985.33
New Money: $32,864.14
New UPB: $249,849.47
Section: 1.23, Block: 132, Lot: 29

_____ [Space Above This Line For Recording Data] _____
Original Recording Date: October 04, 1999                     Loan No ███████████
                                                              Investor Loan No: ███████████

## LOAN MODIFICATION AGREEMENT
### (Providing For Fixed Interest Rate)

**This property is or will be improved by a one or two family dwelling only.**

    This Loan Modification Agreement ("Agreement"), made this  6th day of July, 2017, between
**BRUCE ROTHMAN and DENISE ROTHMAN**, whose mailing address is **49 ROUNDABEND ROAD,
TARRYTOWN, NY 10591** ("Borrower") and **Nationstar Mortgage LLC**, whose address is **8950
CYPRESS WATERS BLVD, COPPELL, TX 75019** ("Lender"), amends and supplements (1) the
Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), dated **August 26, 1999** and
recorded in Book/Liber 26168, Page 207, Instrument No: N/A and recorded on October 04, 1999, of the
Official Records of **WESTCHESTER** County, NY and (2) the Note, bearing the same date as, and
secured by, the Security Instrument, which covers the real and personal property described in the
Security Instrument and defined therein as the "Property", located at
                    **49 ROUNDABEND ROAD, TARRYTOWN, NY 10591,**
                                (Property Address)
the real property described being set forth as follows:

**See Exhibit "A" attached hereto and made a part hereof;**

the Chain of Title described being set forth as follows:



8300a 08/14                                          ...Uniform Instrument        Form 3179 1/01 (rev. 4/14)
                                                                                   *(page 1 of 6)*

Copy

**See Exhibit "B" attached hereto and made a part hereof;**

In consideration of the mutual promises and agreements exchanged, the parties hereto agree as follows (notwithstanding anything to the contrary contained in the Note or Security Instrument):

1. As of **July 1, 2017**, the amount payable under the Note and the Security Instrument (the "Unpaid Principal Balance") is U.S. **$249,849.47**, consisting of the unpaid amount(s) loaned to Borrower by Lender plus any interest and other amounts capitalized.

2. Borrower promises to pay the Unpaid Principal Balance, plus interest, to the order of Lender. Interest will be charged on the Unpaid Principal Balance at the yearly rate of **5.375%**, from **July 1, 2017**. Borrower promises to make monthly payments of principal and interest of U.S. **$1,267.47**, beginning on the **1st day of August, 2017**, and continuing thereafter on the same day of each succeeding month until principal and interest are paid in full. The yearly rate of **5.375%** will remain in effect until principal and interest are paid in full. If on **July 1, 2057** (the "Maturity Date"), Borrower still owes amounts under the Note and the Security Instrument, as amended by this Agreement, Borrower will pay these amounts in full on the Maturity Date.

3. If all or any part of the Property or any interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by the Security Instrument.
   If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which Borrower must pay all sums secured by the Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by the Security Instrument without further notice or demand on Borrower.

4. Borrower also will comply with all other covenants, agreements, and requirements of the Security Instrument, including without limitation, Borrower's covenants and agreements to make all payments of taxes, insurance premiums, assessments, escrow items, impounds, and all other payments that Borrower is obligated to make under the Security Instrument; however, the following terms and provisions are forever canceled, null and void, as of the date specified in paragraph No. 1 above:

   (a)   all terms and provisions of the Note and Security Instrument (if any) providing for, implementing, or relating to, any change or adjustment in the rate of interest payable under the Note; and

   (b)   all terms and provisions of any adjustable rate rider, or other instrument or document that is affixed to, wholly or partially incorporated into, or is part of, the Note or Security Instrument and that contains any such terms and provisions as those referred to in (a) above.

5. Borrower understands and agrees that:

   (a)   All the rights and remedies, stipulations, and conditions contained in the Security



Uniform Instrument

Form 3179 1/01 (rev. 01/4)
*(page 2 of 6)*

8300a 08/14



Copy

Instrument relating to default in the making of payments under the Security Instrument shall also apply to default in the making of the modified payments hereunder.

(b)   All covenants, agreements, stipulations, and conditions in the Note and Security Instrument shall be and remain in full force and effect, except as herein modified, and none of the Borrower's obligations or liabilities under the Note and Security Instrument shall be diminished or released by any provisions hereof, nor shall this Agreement in any way impair, diminish, or affect any of Lender's rights under or remedies on the Note and Security Instrument, whether such rights or remedies arise thereunder or by operation of law. Also, all rights of recourse to which Lender is presently entitled against any property or any other persons in any way obligated for, or liable on, the Note and Security Instrument are expressly reserved by Lender.

(c)   Nothing in this Agreement shall be understood or construed to be a satisfaction or release in whole or in part of the Note and Security Instrument.

(d)   All costs and expenses incurred by Lender in connection with this Agreement, including recording fees, title examination, and attorney's fees, shall be paid by the Borrower and shall be secured by the Security Instrument, unless stipulated otherwise by Lender.

(e)   Borrower agrees to make and execute such other documents or papers as may be necessary or required to effectuate the terms and conditions of this Agreement which, if approved and accepted by Lender, shall bind and inure to the heirs, executors, administrators, and assigns of the Borrower.

(f)   Borrower authorizes Lender, and Lender's successors and assigns, to share Borrower information including, but not limited to (i) name, address, and telephone number, (ii) Social Security Number, (iii) credit score, (iv) income, (v) payment history, (vi) account balances and activity, including information about any modification or foreclosure relief programs, with Third Parties that can assist Lender and Borrower in obtaining a foreclosure prevention alternative, or otherwise provide support services related to Borrower's loan. For purposes of this section, Third Parties include a counseling agency, state or local Housing Finance Agency or similar entity, any insurer, guarantor, or servicer that insures, guarantees, or services Borrower's loan or any other mortgage loan secured by the Property on which Borrower is obligated, or to any companies that perform support services to them in connection with Borrower's loan.

Borrower consents to being contacted by Lender or Third Parties concerning mortgage assistance relating to Borrower's loan including the trial period plan to modify Borrower's loan, at any telephone number, including mobile telephone number, or email address Borrower has provided to Lender or Third Parties.

By checking this box, Borrower also consents to being contacted by text messaging [ ].

(g)   In the event of any action(s) arising out of or relating to this Agreement or in connection with any foreclosure action(s) dismissed as a result of entering into this Agreement, if permitted by applicable law, I will remain liable for and bear my own attorney fees and costs incurred in connection with any such action(s).

(h)   Borrower understands that the mortgage insurance premiums on the Loan, if applicable, may increase as a result of the capitalization which will result in a higher total monthly

████████████████████                    █████████████████

8300a 08/14                    ████iform Instrument                    (page 3 of 6)

(Page 4 of 12)

**Copy**

payment. Furthermore, the date on which the borrower may request cancellation of mortgage insurance may change as a result of the New Principal Balance.

6. In the event that I was discharged in a Chapter 7 bankruptcy proceeding subsequent to the execution of the loan documents and did not reaffirm the mortgage debt under applicable law, Lender agrees that I will not have personal liability on the debt pursuant to this Agreement.

7. By this paragraph, Lender is notifying Borrower that any prior waiver by Lender of Borrower's obligation to pay to Lender Funds for any or all Escrow Items is hereby revoked, and Borrower has been advised of the amount needed to fully fund the Escrow Items.

8. This Agreement modifies an obligation secured by an existing security instrument recorded in WESTCHESTER County, NY, upon which all recordation taxes have been paid. As of the date of this agreement, the unpaid principal balance of the original obligation secured by the existing security instrument is $216,985.33. The principal balance secured by the existing security instrument as a result of this Agreement is $249,849.47, which amount represents the excess of the unpaid principal balance of this original obligation.

Uniform Instrument

6300a 08/14



*(page 4 of 6)*

(Page 5 of 12)

**Copy**

In Witness Whereof, the Lender and I have executed this Agreement.

_Bruce Roth_                                    Date: 7/17/17
**BRUCE ROTHMAN** -Borrower

_Denise Roth_                                   Date: 7/17/17
**DENISE ROTHMAN** -Borrower

_____ [Space Below This Line For Acknowledgments] _____

State of New York

County of _Westchester_

On the 11th day of _July_ in the year 2017 before me, the undersigned, personally
appeared **BRUCE ROTHMAN and DENISE ROTHMAN**, personally known to me or proved to me on the
basis of satisfactory evidence to be the individual(s) whose name(s) is (are) subscribed to the within
instrument and acknowledged to me that he/she/they executed the same in his/her/their capacity(ies),
and that by his/her/their signature(s) on the instrument, the individual(s), or the person upon behalf of
which the individual(s) acted, executed the instrument.

_Nandhini Sundaram_
(Signature and office of individual taking acknowledgment.)

_NANDHINI SUNDARAM._
(Printed name of individual taking acknowledgment.)

My commission expires : _Sept. 2nd 2020_

NANDHINI SUNDARAM
Notary Public State of New York
Qualified in Rockland County
No. 01SU6192640
Commission Expires September 2nd, 2020

(Page 6 of 12)

Copy

**Nationstar Mortgage LLC**

By: _Tiffani Agnew_ _____ (Seal) - Lender
Name: _Tiffani Agnew_
Title: **Assistant Secretary**

_9-8-17_
Date of Lender's Signature

_____ [Space Below This Line For Acknowledgments] _____

STATE OF ___ TEXAS _____ )

COUNTY OF ___ DALLAS _____ ) SS.:

On the ___8___ day of _September_ in the year ___2017___, before me, the _____
undersigned, personally appeared ___TIFFANI AGNEW___ (personally known to me or
proved to me on the basis of satisfactory evidence to be the individual(s) whose name(s) is (are)
subscribed to the within instrument and acknowledged to me that he/she/they executed the same in
his/her/their capacity(ies), and that by his/her/their signature(s) on the instrument, the individual(s), or the
person on behalf of which the individual(s) acted, executed the instrument and that such individual made
such appearance before the undersigned in the ___DALLAS, TEXAS___ (insert the city or
other political subdivision and the State or country or other place the acknowledgment was taken).

 _PATRICK ESHIDI ODIMULA_
(Signature and office of individual taking acknowledgment.)
_NOTARY PUBLIC_

PATRICK ESHIDI ODIMULA
Notary Public, State of Texas
My Comm. Expires 12-15-2019
Notary ID 130489633





LOAN MODIFICATION AGREEMENT - Single Family - Fannie Mae Uniform Instrument
8300s 09/14

_(page 6 of 6)_

Copy

Loan No.
Borrower: BRUCE ROTHMAN and DENISE ROTHMAN

## AGREEMENT TO MAINTAIN ESCROW ACCOUNT

WHEREAS, BRUCE ROTHMAN and DENISE ROTHMAN ("Borrower") desires Nationstar Mortgage LLC ("Lender") to collect payments from Borrower to be held by Lender for the payment of certain sums due in connection with Borrower's Note and Security Instrument, dated August 26, 1999, (hereinafter referred to as "Note" and "Security Instrument" respectively) currently held by Lender;

NOW THEREFORE, in consideration of the foregoing and the mutual covenants contained in this Agreement ("Agreement"), Borrower agrees to pay Lender, on the day Periodic Payments are due under the Note, until the Note is paid in full, or the Escrow Account is otherwise terminated pursuant to this Agreement or in accordance with applicable law, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over the Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under the Security Instrument; and (d) Mortgage Insurance Premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums. These items are called "Escrow Items." In the event that Borrower receives bills, assessments, invoices, or other requests for payment of Escrow Items, Borrower shall promptly furnish to Lender all such notices.

Borrower shall pay Lender the Funds for Escrow Items unless this Agreement is terminated either by Lender, or pursuant to applicable law. In the event of termination, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. In the event Borrower is obligated to pay Escrow Items directly, and Borrower fails to pay the amount due for an Escrow Item, Lender may pay such amount in accordance with the terms of the Note and Security Instrument and Borrower shall then be obligated to repay Lender any such amount. Additionally, if Borrower is obligated to pay Escrow Items directly, and Borrower fails to pay the amount due for an Escrow Item, Lender may, in accordance with applicable law, require Borrower to maintain an Escrow Account.

Borrower agrees to make an initial payment of Funds to establish the escrow account, which amount shall be based on an estimate of the amount and date of expenditures for future Escrow Items, or otherwise in accordance with the Real Estate Settlement Procedures Act ("RESPA"). The estimate of expenditures of future Escrow Items shall be made based on current data available to Lender. Borrower acknowledges that the actual payments of Escrow Items may vary from the estimated amounts.

Lender will collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with applicable law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time period specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and applicable law permits Lender to make such a charge. Unless agreed to in writing or applicable law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA. If there is a



(Page 8 of 12)

**Copy**

Loan No.: ▮▮▮▮▮
Borrower: BRUCE ROTHMAN and DENISE ROTHMAN

deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument or termination of this Agreement, Lender shall promptly refund to Borrower any Funds held by Lender.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Agreement to Maintain Escrow Account.

_Bruce Rothman_

**BRUCE ROTHMAN** -Borrower                Date: 7/17/17

_Denise Rotm_

**DENISE ROTHMAN** -Borrower               Date: 7/17/17



AGREEMENT TO ESTABLISH ESCROW ACCOUNT 11/12                                        (Page 2 of 2)

**Copy**

## Exhibit "A"

Loan Number: ▮▮▮▮▮▮▮

Property Address: **49 ROUNDABEND ROAD, TARRYTOWN, NY 10591**

Legal Description:

ALL THAT CERTAIN PLOT, PIECE OR PARCEL OF LAND, SITUATE, LYING AND BEING IN
THE VILLAGE OF TARRYTOWN, TOWN OF GREENBURGH, COUNTY OF WESTCHESTER AND STATE
OF NEW YORK, KNOWN AND DESIGNATED AS LOT NO. 76 ON A CERTAIN MAP ENTITLED,
SECTION THREE, SUBDIVISION MAP OF TARRYHILL IN THE VILLAGE OF TARRYTOWN, TOWN
OF GREENBURGH, WESTCHESTER COUNTY, NEW YORK, DATED MARCH 12, 1968 MADE BY
WARD CARPENTER ENGINEERS INC., AND FILED IN THE WESTCHESTER COUNTY CLERKS
OFFICE, DIVISION OF LAND RECORDS, ON MAY 13, 1969 AS MAP NO. 16711. SECTION:
1.23, BLOCK: 132, LOT: 29.



Exhibit A Legal Description Attachment 11/12



*Page 1 of 1*

**Copy**

**Exhibit "B"**

Loan Number: ███████
Property Address: **49 ROUNDABEND ROAD, TARRYTOWN, NY 10591**
Chain of Title: ORIGINAL MORTGAGE DATED 08/26/1999 AND RECORDED ON 10/04/1999 IN BOOK
26168, PAGE 207 AND INSTRUMENT NO. N/A WITH LOAN AMOUNT $370,000.00 FROM BRUCE
ROTHMAN AND DENISE ROTHMAN TO REPUBLIC CONSUMER LENDING GROUP, INC.
ASSIGNMENT OF MORTGAGE DATED 08/17/2011 FROM HSBC MORTGAGE CORPORATION
(USA) SUCCESSOR BY MERGER TO REPUBLIC CONSUMER LENDING GROUP, INC TO
MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., AS NOMINEE FOR HSBC BANK USA,
N.A., RECORDED ON 09/15/2011 IN BOOK N/A, PAGE N/A WITH INSTRUMENT NO. 512433027.
ASSIGNMENT OF MORTGAGE DATED 09/27/2016 FROM MORTGAGE ELECTRONIC
REGISTRATION SYSTEMS, INC., AS NOMINEE FOR HSBC BANK USA, N.A. TO HSBC BANK USA,
N.A, RECORDED ON 09/28/2016 IN BOOK N/A, PAGE N/A WITH INSTRUMENT NO. 562723231.
ASSIGNMENT OF MORTGAGE DATED _____ FROM HSBC BANK USA, N.A. TO
_____, RECORDED ON _____
IN BOOK _____, PAGE _____ WITH INSTRUMENT NO.
_____.

Page 1 of 1

**Copy**

## AFFIDAVIT UNDER SECTION 255 OF THE NEW YORK STATE LAW
### (Modification Agreement)

**State of Texas**
**County of Dallas**

I, ___Tiffani Agnew___, being duly sworn, deposes and says:

1. That he/she is the agent for the owner and holder of the hereinafter described mortgage, and is familiar with the facts set forth herein.

2. That a certain mortgage (the "Mortgage") bearing the date of August 26, 1999, in the principal amount of THREE HUNDRED SEVENTY THOUSAND AND NO/100 ($370,000.00) was made by BRUCE ROTHMAN and DENISE ROTHMAN as Mortgagor to REPUBLIC CONSUMER LENDING GROUP, INC. as original Mortgagee, recorded on October 4, 1999, in Book/Liber 26168, Page 207, Instrument No: N/A, in the WESTCHESTER County Clerk's Office, upon which the mortgage tax in the amount of $3,675.00 was duly paid thereon.

3. That the instrument offered for recording herewith is a Modification of the Mortgage (the "Agreement") made by BRUCE ROTHMAN and DENISE ROTHMAN to  Nationstar Mortgage LLC effective July 1, 2017, and to be recorded in the WESTCHESTER County Clerk's Office.

4. That the Agreement offered for recording modifies and does not create or secure any new or further lien, indebtedness or obligation other than the principal indebtedness or obligation secured by or which under any contingency may be secured by the recorded mortgage hereinabove first described with the exception of the following amount:

   a) Original Principal Amount          $370,000.00
   b) Current Unpaid Principal Balance   $216,985.33
   c) New Money                          $32,864.14
   d) New Unpaid Principal Balance       $249,849.47

5. That there have been no re-loans or re-advances on the Mortgage.

6. That additional mortgage recording tax of $___497.70___ is being paid on the Agreement on the sum set forth in 4c.

7. That Exemption from further tax is CLAIMED under Section 255 of the Tax Law.

8. That the chain of title for the Mortgage is: ORIGINAL MORTGAGE DATED 08/26/1999 AND RECORDED ON 10/04/1999 IN BOOK 26168, PAGE 207 AND INSTRUMENT NO. N/A WITH LOAN AMOUNT $370,000.00 FROM BRUCE ROTHMAN AND DENISE ROTHMAN TO REPUBLIC CONSUMER LENDING GROUP, INC. ASSIGNMENT OF MORTGAGE DATED 08/17/2011 FROM HSBC MORTGAGE CORPORATION (USA) SUCCESSOR BY MERGER TO REPUBLIC CONSUMER LENDING GROUP, INC TO MORTGAGE ELECTRONIC REGISTRATION SYSTEMS. INC., AS NOMINEE FOR HSBC BANK USA, N.A., RECORDED ON 09/15/2011 IN BOOK N/A, PAGE N/A WITH INSTRUMENT NO. 512433027. ASSIGNMENT OF MORTGAGE DATED 09/27/2016 FROM MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., AS NOMINEE FOR HSBC BANK USA, N.A. TO HSBC BANK USA, N.A, RECORDED ON 09/28/2016 IN BOOK N/A, PAGE N/A WITH INSTRUMENT NO. 562723231. ASSIGNMENT OF MORTGAGE DATED _____, FROM HSBC BANK USA, N.A. TO _____ RECORDED ON _____ IN BOOK _____, PAGE _____ WITH INSTRUMENT NO. _____

9. That the Legal Description for the property is: ALL THAT CERTAIN PLOT, PIECE OR PARCEL OF LAND, SITUATE, LYING AND BEING IN THE VILLAGE OF TARRYTOWN, TOWN OF GREENBURGH, COUNTY OF WESTCHESTER AND STATE OF NEW YORK, KNOWN AND DESIGNATED AS LOT NO. 76 ON A CERTAIN MAP ENTITLED, SECTION THREE, SUBDIVISION MAP OF TARRYHILL IN THE VILLAGE OF TARRYTOWN, TOWN OF GREENBURGH,

2090 12/15

(Page 12 of 12)

Copy

**WESTCHESTER COUNTY, NEW YORK, DATED MARCH 12, 1968 MADE BY WARD CARPENTER ENGINEERS INC., AND FILED IN THE WESTCHESTER COUNTY CLERKS OFFICE, DIVISION OF LAND RECORDS, ON MAY 13, 1969 AS MAP NO. 16711. SECTION: 1.23, BLOCK: 132, LOT: 29.**

Nationstar Mortgage LLC



Name: Tiffani Agnew
Title: Assistant Secretary
Sworn to before me this 8th day of ___September___, 2017

PATRICK ESHIDI ODIMULA

Notary Public, State of ___TEXAS___
My Commission Expires: ___12-15-2019___

PATRICK ESHIDI ODIMULA
Notary Public, State of Texas
My Comm. Expires 12-15-2019
Notary ID 130449633





Amount Order Section 255 of the New York State Law
2090 12/15

Page 2 of 2

BRUCE ROTHMAN
49 ROUNDABEND ROAD
TARRYTOWN, NY 10591


DENISE ROTHMAN
49 ROUNDABEND ROAD
TARRYTOWN, NY 10591


BANK OF AMERICA, NATIONAL ASSOCIATION SUCCESSOR BY MERGER TO
SUMMIT BANK
100 NORTH TRYON ST
CHARLOTTE, NC 28202


HSBC BANK USA, NATIONAL ASSOCIATION
1800 TYSONS BLVD
MCLEAN, VA 22102


BOARD OF MANAGERS OF THE TARRYHILL HOMEOWNERS ASSOCIATION
15 ROUND HILL RD
DOBBS FERRY, NY 10522

**EXHIBIT "B"**

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

--------------------------------------------------------------------X

IN RE:                                                    CASE NO.: 19-22965-rdd
                                                                   CHAPTER 7

Bruce Rothman,

        Debtor.


--------------------------------------------------------------------X


RELIEF FROM STAY - REAL ESTATE AND
COOPERATIVE APARTMENTS


I,_____
<NAME AND TITLE> OF


_____
NATIONSTAR MORTGAGE LLC D/B/A MR. COOPER (HEREINAFTER, "Movant"), HEREBY
DECLARE (OR CERTIFY, VERIFY, OR STATE):

### BACKGROUND INFORMATION

1.  REAL PROPERTY OR COOPERATIVE APARTMENT ADDRESS WHICH IS THE SUBJECT OF THIS
MOTION: 49 Roundabend Road, Tarrytown, NY 10591


2.  LENDER NAME: NATIONSTAR MORTGAGE LLC D/B/A MR. COOPER

3.  DATE OF MORTGAGE <MM/DD/YYYY>: 08/26/1999


4.  POST-PETITION PAYMENT ADDRESS:  PO Box 619094, Dallas, TX 75261-9741


### DEBT/VALUE REPRESENTATIONS

5.  TOTAL PRE-PETITION AND POST-PETITION INDEBTEDNESS OF DEBTOR(S) TO MOVANT AT THE TIME OF
FILING THE MOTION: $333,351.37
(Note: this amount may not be relied on as a "payoff" quotation.)


6.  MOVANT'S ESTIMATED MARKET VALUE OF THE REAL PROPERTY OR COOPERATIVE APARTMENT:
$1,400,000.00

7.  SOURCE OF ESTIMATED VALUATION:
    Debtor's Schedule D

---

### STATUS OF DEBT AS OF
### THE PETITION DATE

8.  TOTAL PRE-PETITION INDEBTEDNESS OF DEBTOR(S) TO MOVANT AS OF PETITION FILING DATE:
$333,351.37

    A.    AMOUNT OF PRINCIPAL: $249,402.42

    B.    AMOUNT OF INTEREST: $21,776.19

    C.    AMOUNT OF ESCROW (TAXES AND INSURANCE): $53,960.76

    D.    AMOUNT OF FORCED PLACED INSURANCE EXPENDED BY MOVANT: $0.00

    E.    AMOUNT OF ATTORNEYS' FEES BILLED TO DEBTOR(S) PRE-PETITION: $0.00

    F.    AMOUNT OF PRE-PETITION LATE FEES, IF ANY, BILLED TO DEBTOR(S): $0.00

THE PRE-PETITION DEFAULT AMOUNT IS $79,300.44 BASED UPON 6 MISSED PAYMENTS IN THE AMOUNT OF
$4,141.69; 12 MISSED PAYMENTS IN THE AMOUNT OF $4,170.97; 1 MISSED PAYMENTS IN THE AMOUNT OF $4,398.66

9.  CONTRACTUAL INTEREST RATE: 5.375%          (If interest rate is (or was) adjustable, please list the
rate(s) and date(s) the rate(s) was/were in effect on a separate sheet and attach the sheet as an exhibit to this
form; please list the exhibit number here: _____.)

10. PLEASE EXPLAIN ANY ADDITIONAL PRE-PETITION FEES, CHARGES OR AMOUNTS CHARGED TO
DEBTOR'S/DEBTORS' ACCOUNT AND NOT LISTED ABOVE: Corporate Advances $8,212.00

(If additional space is needed, please list the amounts on a separate sheet and attach the sheet as an exhibit to
this form; please list the exhibit number here: _____.)

### AMOUNT OF ALLEGED POST-PETITION DEFAULT
### (AS OF 05/16/2019)

11. DATE LAST PAYMENT WAS RECEIVED: 10/17/2017

12. ALLEGED TOTAL NUMBER OF PAYMENTS DUE POST-PETITION FROM FILING OF PETITION THROUGH
PAYMENT DUE ON N/A

13. PLEASE LIST ALL POST-PETITION PAYMENTS ALLEGED TO BE IN DEFAULT:

| ALLEGED PAYMENT DUE DATE | ALLEGED AMOUNT DUE | AMOUNT RECEIVED | AMOUNT APPLIED TO PRINCIPAL | AMOUNT APPLIED TO INTEREST | AMOUNT APPLIED TO ESCROW | LATE FEE CHARGED (IF ANY) |
|---|---|---|---|---|---|---|
| N/A | N/A | N/A | N/A | N/A | N/A | N/A |
| N/A | N/A | N/A | N/A | N/A | N/A | N/A |
| N/A | N/A | N/A | N/A | N/A | N/A | N/A |
| TOTALS: | N/A | N/A | N/A | N/A | N/A | N/A |

14. AMOUNT OF MOVANT'S ATTORNEYS' FEES BILLED TO DEBTOR FOR THE PREPARATION, FILING AND PROSECUTION OF THIS MOTION: $750.00

15. AMOUNT OF MOVANT'S FILING FEE FOR THIS MOTION: $ 181.00

16. OTHER ATTORNEYS' FEES BILLED TO DEBTOR POST-PETITION: $0.00

17. AMOUNT OF MOVANT'S POST-PETITION INSPECTION FEES: $0.00

18. AMOUNT OF MOVANT'S POST-PETITION APPRAISAL/BROKER'S PRICE OPINION: $0.00

19. AMOUNT OF FORCED PLACED INSURANCE OR INSURANCE PROVIDED BY THE MOVANT POST-PETITION: $0.00

20. SUM HELD IN SUSPENSE BY MOVANT IN CONNECTION WITH THIS CONTRACT, IF APPLICABLE: $0.00

21. AMOUNT OF OTHER POST-PETITION ADVANCES OR CHARGES, FOR EXAMPLE TAXES, INSURANCE INCURRED BY DEBTOR ETC.: $0.00

## REQUIRED ATTACHMENTS TO MOTION

Please attach the following documents to this motion and indicate the exhibit number associated with the documents.

(1) Copies of documents that indicate Movant's interest in the subject property. For purposes of example only, a complete and legible copy of the promissory note or other debt instrument together with a complete and legible copy of the mortgage and any assignments in the chain from the original mortgagee to the current moving party. (Exhibit A.)

(2) Copies of documents establishing proof of standing to bring this Motion. (Exhibit A.)

(3) Copies of documents establishing that Movant's interest in the real property or cooperative apartment was perfected. For the purposes of example only, a complete and legible copy of the Financing Statement (UCC-1) filed with either the Clerk's Office or the Register of the county the property or cooperative apartment is located in. (Exhibit A.)

## CERTIFICATION FOR BUSINESS RECORDS

I CERTIFY THAT THE INFORMATION PROVIDED IN THIS FORM AND/OR ANY EXHIBITS ATTACHED TO THIS FORM (OTHER THAN THE TRANSACTIONAL DOCUMENTS ATTACHED AS REQUIRED BY PARAGRAPHS 1, 2 AND 3, IMMEDIATELY ABOVE) IS DERIVED FROM RECORDS THAT WERE MADE AT OR NEAR THE TIME OF THE OCCURRENCE OF THE MATTERS SET FORTH BY, OR FROM INFORMATION TRANSMITTED BY, A PERSON WITH KNOWLEDGE OF THOSE MATTERS, WERE KEPT IN THE COURSE OF THE REGULARLY CONDUCTED ACTIVITY; AND WERE MADE BY THE REGULARLY CONDUCTED ACTIVITY AS A REGULAR PRACTICE.

I FURTHER CERTIFY THAT COPIES OF ANY TRANSACTIONAL DOCUMENTS ATTACHED TO THIS FORM AS REQUIRED BY PARAGRAPHS 1, 2 AND 3, IMMEDIATELY ABOVE, ARE TRUE AND ACCURATE COPIES OF THE ORIGINAL DOCUMENTS.  I FURTHER CERTIFY THAT THE ORIGINAL DOCUMENTS ARE IN MOVANT'S POSSESSION, EXCEPT AS FOLLOWS:

## DECLARATION

I,  ____Mary Gracia , Assistant Secretary____
<NAME AND TITLE> OF

NATIONSTAR MORTGAGE LLC D/B/A MR. COOPER, HEREBY DECLARE (OR CERTIFY, VERIFY, OR STATE) PURSUANT TO  28 U.S.C. SECTION 1746 UNDER PENALTY OF PERJURY THAT THE FOREGOING IS TRUE AND  CORRECT BASED ON PERSONAL KNOWLEDGE OF THE MOVANT'S BOOKS AND BUSINESS RECORDS.

EXECUTED AT ____Louisville____ <CITY/TOWN>, __TX__ <STATE> ON THIS __28__ DAY OF __May____ <MONTH>, 20 __19__ <YEAR>.

_____
<PRINT NAME>

Mary Gracia
Assistant Secretary of Nationstar Mortgage LLC
d/b/a Mr. Cooper
Affiant

_____
<TITLE>
Nationstar Mortgage LLC d/b/a Mr. Cooper
Attn: Bankruptcy Dept
8950 Cypress Waters Blvd
Coppell, Texas 75019

# EXHIBIT "C"

**Fill in this information to identify your case:**

| | |
|---|---|
| Debtor 1 | Bruce  Rothman |
| | First Name        Middle Name        Last Name |
| Debtor 2 | |
| (Spouse, if filing) | First Name        Middle Name        Last Name |
| United States Bankruptcy Court for the: | Southern District of New York |
| Case number (If known) | _____ |

☐ Check if this is an amended filing

## Official Form 106D

# Schedule D: Creditors Who Have Claims Secured by Property     12/15

Be as complete and accurate as possible. If two married people are filing together, both are equally responsible for supplying correct information. If more space is needed, copy the Additional Page, fill it out, number the entries, and attach it to this form. On the top of any additional pages, write your name and case number (if known).

1. **Do any creditors have claims secured by your property?**
   - ☐ No. Check this box and submit this form to the court with your other schedules. You have nothing else to report on this form.
   - ☑ Yes. Fill in all of the information below.

---

**Part 1:** **List All Secured Claims**

2. **List all secured claims.** If a creditor has more than one secured claim, list the creditor separately for each claim.  If more than one creditor has a particular claim, list the other creditors in Part 2. As much as possible, list the claims in alphabetical order according to the creditor's name.

| | Column A<br>Amount of claim<br>Do not deduct the value of collateral. | Column B<br>Value of collateral that supports this claim | Column C<br>Unsecured portion<br>If any |
|---|---|---|---|

**2.1** Fifth Third Bank

Describe the property that secures the claim: $6,165.00 | $6,175.00 | $0.00

Creditor's Name
38 Fountain Sq Pl
Number     Street

2011 Infiniti G - $6,175.00

Cincinnati        OH    45202
City                State    ZIP Code

**Who owes the debt?** Check one.
- ☑ Debtor 1 only
- ☐ Debtor 2 only
- ☐ Debtor 1 and Debtor 2 only
- ☐ At least one of the debtors and another

☐ Check if this claim relates to a community debt
Date debt was incurred  7/2014

**As of the date you file, the claim is:** Check all that apply.
- ☐ Contingent
- ☑ Unliquidated
- ☐ Disputed

**Nature of lien.** Check all that apply.
- ☑ An agreement you made (such as mortgage or secured car loan)
- ☐ Statutory lien (such as tax lien, mechanic's lien)
- ☐ Judgment lien from a lawsuit
- ☐ Other (including a right to offset) _____

Last 4 digits of account number   3408

**2.2** HSBC Bank

Describe the property that secures the claim: $870,000.00 | $1,400,000.0 | $0.00

Creditor's Name
1 Corporate Drive
Number     Street

49 Roundabend Road, Tarrytown, NY 10591 - $1,400,000.00

Lake Zurick       IL    60047-89
City                State    ZIP Code

**Who owes the debt?** Check one.
- ☐ Debtor 1 only
- ☐ Debtor 2 only
- ☐ Debtor 1 and Debtor 2 only
- ☑ At least one of the debtors and another

☐ Check if this claim relates to a community debt
Date debt was incurred  _____

**of the date you file, the claim is:** Check all that apply.
- ☐ Contingent
- ☐ Unliquidated
- ☐ Disputed

**Nature of lien.** Check all that apply.
- ☐ An agreement you made (such as mortgage or secured car loan)
- ☐ Statutory lien (such as tax lien, mechanic's lien)
- ☐ Judgment lien from a lawsuit
- ☐ Other (including a right to offset) _____

Last 4 digits of account number   7564

Add the dollar value of your entries in Column A on this page. Write that number here:  $876,165.00

**Part 1:**

**Additional Page**

After listing any entries on this page, number them beginning with 2.3, followed by 2.4, and so forth.

| | Column A | Column B | Column C |
|---|---|---|---|
| | **Amount of claim** | **Value of collateral that supports this claim** | **Unsecured portion** |
| | Do not deduct the value of collateral. | | If any |

---

**2.3**

Nationstar Mortgage LLC d/b/a Mr. Cooper

Creditor's Name

8950 Cypress Waters Blvd.

Number     Street

Coppell         TX    75019

City       State    ZIP Code

**Who owes the debt?** Check one.

☐ Debtor 1 only
☐ Debtor 2 only
☐ Debtor 1 and Debtor 2 only
☑ At least one of the debtors and another

☐ **Check if this claim relates to a community debt**

**Date debt was incurred** _____

**Describe the property that secures the claim:**    $ 270,000.00    $ 1,400,000.00    $ 0.00

49 Roundabend Road, Tarrytown, NY 10591 - $1,400,000.00

**As of the date you file, the claim is:** Check all that apply.

☐ Contingent
☐ Unliquidated
☐ Disputed

**Nature of lien.** Check all that apply.

☐ An agreement you made (such as mortgage or secured car loan)
☐ Statutory lien (such as tax lien, mechanic's lien)
☐ Judgment lien from a lawsuit
☐ Other (including a right to offset) _____

**Last 4 digits of account number**

---

**2.4**

Recovery Racing V LLC   d/b/a Maserati of Manhatten

Creditor's Name

c/o The Law Firm of Elias C. Schwartz

Number     Street

343 Great Neck Road

Great Neck      NY    11021

City       State    ZIP Code

**Who owes the debt?** Check one.

☑ Debtor 1 only
☐ Debtor 2 only
☐ Debtor 1 and Debtor 2 only
☐ At least one of the debtors and another

☐ **Check if this claim relates to a community debt**

**Date debt was incurred** _____

**Describe the property that secures the claim:**    $ 100,000.00    $ 7,000.00    $ 93,000.00

2005 Maserati Quartroporte - $7,000.00

**As of the date you file, the claim is:** Check all that apply.

☐ Contingent
☐ Unliquidated
☐ Disputed

**Nature of lien.** Check all that apply.

☐ An agreement you made (such as mortgage or secured car loan)
☐ Statutory lien (such as tax lien, mechanic's lien)
☐ Judgment lien from a lawsuit
☐ Other (including a right to offset) _____

**Last 4 digits of account number**

---

Creditor's Name

Number     Street

City       State    ZIP Code

**Who owes the debt?** Check one.

☐ Debtor 1 only
☐ Debtor 2 only
☐ Debtor 1 and Debtor 2 only
☐ At least one of the debtors and another

☐ **Check if this claim relates to a community debt**

**Date debt was incurred** _____

**Describe the property that secures the claim:**    $_____    $_____    $_____

**As of the date you file, the claim is:** Check all that apply.

☐ Contingent
☐ Unliquidated
☐ Disputed

**Nature of lien.** Check all that apply.

☐ An agreement you made (such as mortgage or secured car loan)
☐ Statutory lien (such as tax lien, mechanic's lien)
☐ Judgment lien from a lawsuit
☐ Other (including a right to offset) _____

**Last 4 digits of account number**

---

| | |
|---|---|
| Add the dollar value of your entries in Column A on this page. Write that number here: | $ 370,000.00 |
| If this is the last page of your form, add the dollar value totals from all pages. Write that number here: | $ 1,246,165.00 |